108  473
s 112  301

CARMICHAEL *v.* LATHROP.[1]

1. WILLS—WHO ARE LEGATEES.
   One who is given by will a residuary interest in the testator's personalty is none the less a legatee because the same clause of the will gives him a like interest in the realty.

2. SAME—ADEMPTION OF BEQUEST BY CONVEYANCE OF REALTY.
   A residuary bequest to a child of the testator will be held to have been adeemed *pro tanto* by a subsequent conveyance of real estate to the child, where it clearly appears that such was the intention of the testator.

[1] Rehearing denied March 12, 1896.

3. Same—Presumption as to Intention.

Whether the presumption of an intention to adeem, ordinarily arising from the fact of payment when made by a testator standing *in loco parentis* to the legatee, is applicable to the case stated, the gift and the bequest not being *ejusdem generis,—quære.*

4. Same—Revocation of Will.

The contention that the allowance of a conveyance of land as a satisfaction of a legacy is equivalent to a revocation of the will in part, which, under the statute, must be evidenced by the destruction of the will or the making of a new one, is without force, since the will is not overturned or revoked, but, rather, is to that extent satisfied.

Appeal from Wayne; Donovan, J. Submitted January 16, 1896. Decided February 26, 1896.

Bill by Marilla B. Carmichael against Ada M. Lathrop and Emily B. Lloyd to charge the defendants with the value of certain property alleged to have been conveyed to them in partial satisfaction of their legacies under the will of Henry P. Pulling, deceased. From a decree dismissing the bill, complainant appeals. Reversed.

*Fraser & Gates,* for complainant.

*C. A. Kent,* for defendants.

Hooker, J. The will of Henry P. Pulling was executed in June, 1872. After giving his wife the use and enjoyment of all of his property during life, in lieu of dower, it provided that—

"*Second.* All the remainder of the estate of, in, and to my said property, both real and personal, subject to the said life estate of my said wife, I give, devise, and bequeath to my three daughters, Ada M. Lathrop, of Detroit, Michigan, Emily Lloyd, of Albany, New York, and Marilla B. Carmichael, of Amsterdam, New York, and to their heirs forever, share and share alike. * * *

"*Third.* I hereby authorize and empower my hereinafter named executors to sell and convey in fee simple absolute, in their discretion, any portion or all of my real estate, with a view of otherwise investing the proceeds

thereof, or to change my present securities into real investments. But such change is to be done with the consent of my wife, and the approval of the probate court or a court of chancery. And this power and authority of so selling and conveying in fee simple absolute my real estate is hereby made notwithstanding the bequests which are given to my daughters, which bequests are hereby made subservient to said power. And I do hereby direct my executors to invest all my moneys and property, and the avails of all real estate so sold, in first-class, unincumbered real-estate mortgages, or in United States bonds or Michigan State bonds, said securities to be held and retained by them, and the income thereof paid quarter yearly, or, at the furthest, every half year, by them, to my said wife, until her decease, and on such death my estate is to be closed up and distributed as provided for in the second clause of this my will.

"And, lastly, I do hereby appoint my brother Abraham C. Pulling, of New York City, my brother-in-law William P. Bridgman, of Detroit, and my son-in-law Joseph Lathrop, of Detroit, to be the executors of this my last will and testament, hereby revoking all former wills by me made."

Mr. Pulling died in July, 1890, and the will was probated August 19, 1890. Joseph Lathrop qualified as executor. The probate records show that at the time of the testator's death he was seised in fee of real estate to the value of $65,000, that there was due to him upon land contracts $45,000, that he owned other personal property to the amount of $30,000, and that there were no debts or claims against the estate. Previous to the death of the testator, he conveyed to each of the defendants a parcel of real estate; that conveyed to Mrs. Lloyd being alleged to be worth $14,000, and that received by Mrs. Lathrop said to be worth $10,000. There is evidence tending to show that he intended to repair the house upon Mrs. Lathrop's property, thereby making the gift to her equal to that of Mrs. Lloyd, and that he intended to do as well by his other daughter, the complainant; but her husband became embarrassed, and finally went to state's prison, and she never received a home, as the others had.

Her father, however, gave to her money from time to time, for her support, which aggregated $1,100.   Soon after the probate of the will, litigation arose between the widow and children, which was finally adjusted, and the property was divided, the parties executing the necessary deeds and other instruments to carry it into effect.   The accounts of Lathrop, the executor, were settled, and he was discharged.   There is now some land held in common by the three sisters.

The complainant files the bill in this cause, alleging that the lands conveyed by the testator to her two sisters should be treated as ademptions of their respective legacies, and that they should be required to account to her for her share thereof.   She alleges that her father so intended, and that they recognized the justice thereof, and promised to see that she received the same, and, relying upon such promises, she consented to the settlement of the estate, expecting that her sisters would pay her an amount .equal to her share of said parcels so received by them.   It seems tacitly agreed that this record involves only the question whether the property conveyed to Mrs. Loyd and Mrs. Lathrop before the testator's death should be applied upon their respective interests under the will, or, in other words, as the counsel for the complainant state it, whether it can be treated as an ademption or a satisfaction *pro tanto* of their bequests. We are perhaps at liberty to assume from the pleadings and admitted facts that the defendants received sufficient personal property under the will to more than cover the claim of the complainant; . in other words, that they have received bequests to such amount in addition to any lands that they may have received.   As to such personal property, the will made the sisters legatees, although they may have been also devisees as to the real estate, if the contention of the defendants' counsel is correct.   In other words, they are none the less legatees, taking bequests of personal property, because one and the same provision of the will gave them both personal

and real property. Hence we need spend no time upon
the question whether the terms of the will made them
devisees, as there are legacies sufficient to support the
ademption contended for. We can therefore eliminate
some of the questions which arise where an attempt
is made to apply the doctrine of satisfaction to a devise of
real property by reason of the conveyance to the devisee
of other property. The case is one where it is claimed
that a gift of personal property by will may be satisfied
by a conveyance of land, when such is the clear intention
of the testator.

If a person should bequeath to another a sum of money,
and, previous to his (the testator's) death, should pay to
such person the same amount, upon the express under-
standing that it was to discharge the bequest, the legacy
would be thereby adeemed. But, in the absence of an ap-
parent or expressed intention, that would not ordinarily
be the effect of the payment of a sum of money to a lega-
tee under an existing will. Generally, such payment
would not affect the legacy. To this rule there is an
exception, where the testator is a parent of or stands
to the legatee *in loco parentis.* In such case the pay-
ment would be presumed to be an ademption of the
legacy. At first blush this impresses one as an unrea-
sonable rule, as it puts the stranger legatee upon a bet-
ter footing than the testator's own son, and judges and
law-writers have severely condemned the rule. See 2
Story, Eq. Jur. §§ 1110-1113. It has been said that
"this rule has excited the regret and censure of more
than one eminent modern judge, though it has met with
approbation from other high authorities." 2 Williams,
Ex'rs (7th Am. Ed.), *1194. Story's condemnation
of it is strong, but he adds, "We must be content to
declare, '*Ita lex scripta est.*' It is established, al-
though it may not be entirely approved." And Wor-
den, J., in *Weston* v. *Johnson*, 48 Ind. 5, says, "What-
ever may be thought of the doctrine, it is thoroughly
established in English and American jurisprudence."

*Shudal* v. *Jekyll*, 2 Atk. 518; *Ex parte Pye*, 18 Ves. 140, 2 White & T. Lead. Cas. Eq. (4th Ed.) 741; *Van Houten* v. *Post*, 33 N. J. Eq. 344. With a refinement of logic, characteristic, the early English judges held that the intention to adeem a legacy is to be presumed from the advancement of a part of the legacy, on the theory that it was the testator's right to do so, and that he must be presumed to be the best judge of the propriety of a revocation (*Ex parte Pye*, 18 Ves. 140); but the rigor of this rule has been relaxed, and cannot now be said to be the law. *Pym* v. *Lockyer*, 5 Mylne & C. 29, 55; *Montague* v. *Montague*, 15 Beav. 565; 2 Williams, Ex'rs (7th Am. Ed.), *1195; *Hopwood* v. *Hopwood*, 7 H. L. Cas. 728; *Wallace* v. *Du Bois*, 65 Md. 153, 159. And see cases cited in 1 Pom. Eq. Jur. § 555, note 3. There are cogent reasons in support of the rule stated,—*i. e.*, that payment to a son adeems the legacy,—which is based on the theory that such legacy is to be considered as a portion, and that the father's natural inclination to treat his children alike renders it more probable that his payment was in the nature of an advancement than a discrimination in favor of one, oftentimes the least worthy. Double portions were considered inequitable, and upon this the doctrine rests. *Suisse* v. *Lowther*, 2 Hare, 424, 433.

While the authorities are a unit that a legacy by one *in loco parentis* will be adeemed by payment, in the absence of an apparent or expressed intent to the contrary, the doctrine was early restricted. Among other limitations was the rule that the presumption could not be applied to a residuary bequest, because the court would not presume that a legacy of a residue, or other indefinite amount, had been satisfied by an advancement, as the testator might be ignorant whether the benefit that he was conferring equaled that which he had already willed. *Freemantle* v. *Bankes*, 5 Ves. 85; *Clendening* v. *Clymer*, 17 Ind. 155; 2 Story, Eq. Jur. § 1115. This exception fell with the discarding of the rule that satisfaction must be in full. *Pym* v. *Lockyer*, 5 Mylne & C. 29;

*Montefiore* v. *Guedalla*, 1 De Gex, F. & J. 93. Again, it was held that it could not be applied unless the advancement was *ejusdem generis* with the legacy. See 2 Story, Eq. Jur. § 1109.

Counsel for the defendants contends that "the conveyance of real estate after the making of a will is held not a satisfaction of any legacy, in whole or in part, *even though that was the clear intent* of the testator," and he cites several authorities to sustain the proposition. In *Arthur* v. *Arthur*, 10 Barb. 9, it was held that "a conveyance made subsequent to a devise of land is not a revocation or satisfaction of a devise of other lands to the grantee. But, if the conveyance be of a portion of the same land, that is a revocation *pro tanto*." This was a case where the court found that the grantor intended and the grantee expected the land conveyed would be in lieu of the grantee's share under the will. It was said that to hold that the conveyance was a satisfaction was to hold that the will might be revoked by implication, which could not be tolerated under the statute of frauds. This case contains an elaborate discussion of the subject, and cites many of the earlier authorities bearing upon it.

The court of appeals considered the subject in *Burnham* v. *Comfort*, 108 N. Y. 535 (2 Am. St. Rep. 462). In this case it was claimed that a devise of real property was satisfied by the payment of money, on the express understanding, evidenced by the receipt of the devisee, that it was received as a part of her father's estate. The court said that, to sustain such claim, they must hold that it operated as a revocation of the will, which would contravene "the spirit, if not the letter," of the statute of frauds, and that the proposition "lacked support in principle as well as authority." The opinion then asserts that "the rule of ademption is predicable of legacies of personal estate, and is not applicable to devises of realty." After discussing the question of intention, and intimating that, while a presumption of intention that the gift

should be in satisfaction would exist if the case were one involving a legacy, it would not in case of a devise, it proceeds to show that the statute of frauds, which extends to wills, was an unsurmountable barrier to the application of the rule contended for, as to devises. Two members of the court dissented.

The supreme court of South Carolina, in the case of *Allen* v. *Allen*, 13 S. C. 512 (36 Am. Rep. 716), had occasion to consider a case where the legatees were also devisees, as in the present case. It was held that payments of money were to be considered as made in satisfaction of the legacies, but not the devises. The court said:

"It would seem that, upon the same principles, devises of real estate ought likewise to be adeemed (if such a term can, with any propriety, be applied to devises) by subsequent payments to the devisees with the intention of producing that result; but it is conceded that the doctrine of ademption has never been applied to devises of real estate, and, in the absence of any authority, we do not feel justified in disregarding the well-established line which has for ages been drawn between real and personal estate, even though we may be thereby compelled to thwart the obvious intention of the testator, and disturb that distribution of his property which he thought was ·proper and just to his descendants. For, while the intention of the testator is the cardinal rule of construction of a will, yet such intention cannot be given effect where it is in conflict with the rules of law. A devise of real estate cannot, like a pecuniary legacy, be affected by any subsequent transactions between the testator and the devisee, but must stand until it is revoked or altered in the manner prescribed by law."

Attention is also called to the case of *Swails* v. *Swails*, 98 Ind. 511. In this case land was devised as follows: 88 acres to J; 36 acres to N. Subsequently the testator conveyed portions of the same land as follows, viz.: 60 acres to J., the son; and 40 acres to N., a grandson. It was held that the deeds did not revoke the devise of the 24 acres to N., and that the doctrine of ademption does not apply to specific devises of real estate, nor where the devisor does

not stand *in loco parentis.* The case followed *Weston* v. *Johnson*, 48 Ind. 1, where it was held that the doctrine of ademption of legacies by advancement to the legatee by the testator in his lifetime has no application to devises of real estate. Again, in *Campbell* v. *Martin*, 87 Ind. 577, it is said, "But we know of no reason whatever for the extension of this doctrine, and making it applicable to devises of real estate."

In *Marshall* v. *Rench*, 3 Del. Ch. 239, the court admits that in some cases a conveyance to a devisee after the making of the will would operate in like manner as the ademption of a legacy,—*e. g.*, where the conveyance to the devisee is of the same land,—because "by such a conveyance the testator executes his devise, precisely as the settlement of a portion on a legatee is an ademption of the legacy." The court adds that "the conveyance to a devisee of lands other than those devised, or of an interest in lands different from that devised, has never been held an implied revocation of the devise." The authorities cited in support of this are all ancient, except *Arthur* v. *Arthur*, hereinbefore discussed.

We mention at this point the fact that all of these were cases where the attack was made upon a devise, merely, except the South Carolina case, and in that case the claim of ademption was sustained as to the legacies.

2 Woerner, Adm'n, p. 978, is cited in support of defendants' contention. This author dismisses the subject with the statement that—

"Specific legacies are said not to be affected by the subsequent advancement of a portion, because the gift of specific articles of personal property by a father to his child is not presumed to be intended as a portion. And, for the same reason, real estate devised is held not to come within the rule; but this exception is repudiated in Virginia, and unfavorably commented on elsewhere." See *Hansbrough* v. *Hooe*, 12 Leigh, 316 (37 Am. Dec. 659).

The authorities cited have been commented on at length

for the purpose of showing that they differ from the case before us, inasmuch as they were cases where it was sought to treat conveyances as satisfactions of devises. This is not a case where an attempt is made to deprive a devisee of title to land willed to him, but it is claimed that the presumption that a *bequest* to a son is satisfied *pro tanto* by a gift is not to be applied where the gift is of land instead of money, or other personal property *ejusdem generis*.

In *Richards* v. *Humphreys*, 15 Pick. 140, will be found the following *dictum* of Shaw, C. J.:

"We have seen that ademption depends solely upon the will of the testator, and not at all upon the ability of the party receiving to give a valid discharge. Had the money been paid to trustees or others for her benefit, without any act or consent of hers, if given expressly in lieu or in satisfaction of such legacy to her, it would have operated as an ademption. *Had he purchased a house or other property* in her name, and for her benefit, with the like intent and purpose expressed, it would have had the same effect."

It is apparent that the law looks upon a legacy to a son as a setting off of his portion. Also, it is plain that a subsequent gift, unless it be of real estate, is presumed to be in satisfaction *pro tanto* of the legacy. It is also settled that whether the gift is to be considered an ademption of a legacy must depend upon the intent of the testator alone. A gift of personal property to a son may be shown not to have been so intended, but the burden is upon the legatee. *Ford* v. *Tynte*, 2 Hem. & M. 324. A gift to a stranger may be shown to have been intended as an ademption, but here the presumption is the other way, the burden being upon the administrator to show such intent.

There can be no doubt that a testator's conveyance of real property may constitute an ademption, if he so intends it, *e. g.*, where he expresses the intent in the conveyance, and possibly in other ways. If so, the

only significance of the doctrine *ejusdem generis* is its effect upon the presumption. The doctrine that the property conveyed must be *ejusdem generis* appears to be the only ground upon which it can be said that the conveyance in this case should not be treated as satisfaction *pro tanto*. It has been said in early cases that "when the gift by will and the portion are not *ejusdem generis*, the *presumption will be repelled.* Thus, land will not be presumed to be intended as a satisfaction for money, nor money for land." *Bellasis v. Uthwatt*, 1 Atk. 428; *Goodfellow v. Burchett*, 2 Vern. 298; *Ray v. Stanhope*, 2 Ch. R. 159; *Saville v. Saville*, 2 Atk. 458; *Grave v. Earl of Salisbury*, 1 Brown, Ch. 425. But see *Bengough v. Walker*, 15 Ves. 507. The courts have not accepted without protest the proposition that the application of the presumption arising from the relation of parent and child should depend upon the similarity of the property willed and donated, and it has been asked "why, if a gift of a thousand dollars will satisfy a legacy of that amount, it should not equally be satisfied by a donation of lands of equal value." And see *Pym v. Lockyer*, 5 Mylne & C. 44. But all agree that ademption is a matter of intent. In *Jones v. Mason*, 5 Rand. (Va.) 577, the court said, "This whole class of cases depends upon the intention;" citing *Hoskins v. Hoskins*, Prec. Ch. 263, and *Chapman v. Salt*, 2 Vern. 646. Again, it was said: "It is laid down generally that a residuary legacy will not adeem a portion due under a settlement, because it is entirely uncertain what that legacy may be. But this rule, like the rest, yields to intention;" citing *Rickman v. Morgan*, 1 Brown, Ch. 63, 2 Brown, Ch. 394. In *Bengough v. Walker*, 15 Ves. 507, it was held that a bequest of a share in powder works, charged with an annuity, was a satisfaction of a portion of £2,000, when it was so intended. See, also, *Gill's Estate*, Pars. Eq. Cas. 139. It is forcefully argued that these cases make obsolete the doctrine of *ejusdem generis*. Whether they do or not,

they certainly show that it must yield to the testator's intent. We cannot, therefore, accede to the proposition of counsel for the defendants "that conveyance of real estate will not be held a satisfaction of any legacy, in whole or in part, even though the intent of the testator is clear."

We think the testimony shows the testator's intent. There may be testimony in the record that was incompetent to prove it, but there is sufficient that was competent. The widow was conversant with the entire transaction, and the defendants' statements are admissions of their knowledge of such intentions.

It is contended that "the allowance of a conveyance of property as a satisfaction of a devise or legacy would be equivalent to a revocation of the will in part, and it would have to be proven in the manner provided by our statute for the revocation of wills, that is, by the destruction of the will, or the making of a new will." 2 How. Stat. § 5793; *Lansing* v. *Haynes*, 95 Mich. 16. We think it should not be called a revocation of the will. The defendants' bequests are permitted to stand unquestioned, and matter in discharge of the obligation (*i. e.*, payment) is shown. The will is not overturned or revoked. It is satisfied.

We think the prayer of the bill should be granted, and the record should be remanded to the circuit court for the county of Wayne, in chancery, for further proceedings. Decreed accordingly.

The other Justices concurred.