M. B. JOHNSON v. ELLA McDOWELL, JAS. and MELVIN
WINKLEMAN, Appellants.

**Wills:** ADVANCEMENTS: SATISFACTION OF LEGACY: EVIDENCE. Where
a testator does not stand *in loco parentis* it will not be presumed
that an advancement of money to a legatee during the life of
the ·testator was intended as a satisfaction of the legacy; but
that question depends on the intention of the testator, which may
be shown by extrinsic evidence. In the instant case the evidence
is held to show that the advancements were in satisfaction of the
legacy.

*Appeal from Mahaska District Court.*—HON. B. W.
PRESTON, Judge.

THURSDAY, FEBRUARY 8, 1912.

THE plaintiff obtained judgment for $100 against
Ella McDowell October 21, 1901, and on May 17, 1909,
caused execution to issue thereon and H. D. Parker, ex-
ecutor of the estate of ·B. F. Winkleman, deceased, to be
served with notice of garnishment. Upon the settlement
of the estate, the executor had in his hands $273.84 after
the payment of debts and expenses of administration and
was ordered by the court to deposit the same with the
clerk for future disposition.

By the second clause of his will, Winkleman had
bequeathed to his niece, Ella Winkleman, since married
to McDowell, the sum of $600, to be paid to her as soon
after his death as possible. By the third clause he be-
queathed the rest of his estate to his nephews, James M.
and Melvin Winkleman. The residuary legatees inter-
vened, claiming that the testator had satisfied the legacy
to Mrs. McDowell prior to his death, and that they were
entitled to his entire estate.

The issues were tried to the court and judgment entered finding there to have been no ademption, and ordering the judgment to be paid from the legacy to Mrs. McDowell.   The interveners appeal.—*Reversed.*

*Bolton & Shangle,* for appellants.

*Irving C. Johnson,* for appellee.

LADD, J.—The estate left by B. F. Winkleman, deceased, after the payment of debts and costs of administration, amounted to $273.85.   By the second clause of his will, executed in 1883, he bequeathed $600 to his niece, Ella McDowell, and by the third clause the residue of his estate to his nephews, James M. and Melvin Winkleman, the interveners.   The issues raised by the pleadings were such that unless the legacy to Mrs. McDowell was satisfied prior to the testator's death, the judgment of plaintiff against her was rightly ordered to be satisfied from a legacy to her; but, if satisfied, the entire amount passed to the interveners under the third clause of the will.

That the testator paid her $400 April 9, 1908, is not questioned, but, as he did not stand *in loco parentis,* no presumption arises therefrom that this was intended to be in satisfaction, even in part, of the legacy.   *Re Youngerman,* 136 Iowa, 488; *Carmichael v. Lathrop,* 108 Mich. 473 (66 N. W. 350, 32 L. R. A. 232); *Re Brown,* 139 Iowa, 219.

Whether such payment was in satisfaction thereof necessarily depends upon the intention of the testator in making it and extrinsic evidence is admissible to aid in ascertaining such intention.   *Allen v. Allen,* 13 S. C. 512 (36 Am. Rep. 718); *Richards v. Humphreys,* 15 Pick. (Mass.) 133; *Van Houten v. Post,* 33 N. J. Eq. 344; *Rogers v. French,* 19 Ga. 316; *Thomas v. Capps,* 5 Bush (Ky.) 276; *Kirk v. Eddows,* 3 Hare, 509.

Such evidence is resorted to not for the purpose of showing an intention of revoking or altering the will, but to establish the purpose of the testator in making the subsequent advance or payment; that is, whether he intended it to operate as a satisfaction of the legacy or as an additional bounty to the legatee. With this in mind, let us turn to the evidence. It appears that in April, 1908, the testator received from one Hunt in final settlement for the purchase of some land, the sum of $750, and out of this handed $400 to Mrs. McDowell, who was then present, and took the following receipt from her: "April 9, 1908. I, Ella McDowell, on the receipt of four hundred dollars ($400.00) in hand paid by B. F. Winkleman, hereby relinquish all claims, now and forever, against the estate of B. F. Winkleman. H. C. Winkleman, Witness. Ella McDowell."

Hunt, who testified, was asked: "Was there anything said as to what that $400 to her was for? A. Now, when I went up there and settled with B. F. Winkleman, it was understood, I presume, by that that she was to get $400, and, before she should receive that, she had to sign her right away; that is, what she should receive out of B. F. Winkleman's estate. Q. That was said there in your presence? A. Oh, certainly; yes, sir."

This was the only evidence bearing on the subject except proof that deceased was unmarried, without children, and then residing at the home of a brother, but immediately thereafter went to live with Mrs. McDowell and husband. There was no evidence indicating that Mrs. McDowell held any claim against the heirs. About twenty-five years prior thereto, he had in his will made her his legatee, and it seems very clear in the light of the oral testimony that both she and deceased intended the amount paid to cover whatever she might take from his estate. It is true that he went to live with the legatee thereafter, but there is no showing of how long he re-

mained with her or of an understanding had with reference thereto, and there is no foundation for the assumption of the appellee that this payment might have been for future support.  True, there is no specific reference in the receipt or testimony to the legacy.  But the witness testified that she "had to sign the right away; that is, whatever she should receive out of B. F. Winkleman's estate."  This was broad enough to cover what she might claim as heir or legatee.  It is not to be assumed that he had forgotten the will as suggested by appellee, and though there is no proof of the fact, both parties assume in argument that he was about eighty years old.  The evidence discloses that he had a small estate and, in the absence of any showing, we are not ready to infer that he was handing this money over to his niece for some disclosed purpose rather than that established by the evidence.  In view of the amount of property he had, it is not reasonable to suppose he intended to make his niece a gift of the $400 in addition to the legacy.  Indeed, the receipt would scarcely have been given, had a gift been intended, nor could it have been intended, if the payment of an existing debt, for the claims mentioned are those against the estate and ordinarily such a receipt, if in satisfaction of an indebtedness, would at least refer to it in some way as an existing obligation.  The parties were evidently, dealing with reference to the future, and though the word "claims" as ordinarily used may mean pecuniary obligations, it often has a much broader meaning, and there is nothing to indicate that it was employed in that restricted sense in the receipt and the testimony of Hunt clearly proves that such was not the purpose.

The appellee contends that the finding of the court should be accorded the conclusiveness of a verdict of the jury.  Undoubtedly, such is the rule when there is a conflict in the evidence, but the record is such that only one reasonable inference is deducible therefrom.  Mrs.

McDowell had an interest in expectancy to relinquish as legatee, and as she was to sign away what she should receive from testator's estate, it ought not to be inferred against the undisputed evidence that, in doing so, she had another purpose, and that the testator in paying her money had another design in mind not expressed. While the evidence is meager, we think the only conclusion to be drawn therefrom is that the money was paid with the design of satisfying the legacy. That it was less in amount than the bequest can make no difference. The legacy was subject to the testator's absolute control, he could satisfy and discharge it by advancing any sum of money in lieu thereof, or he could revoke it entirely without the assent or approbation of the legatee.

We think the evidence conclusive, not only that he intended the payment as a satisfaction of the legacy, but that it was received with that understanding. It follows that the fund in controversy passed to the interveners under the third clause of the will, and the judgment is *reversed.*