*In re* VINCENT'S ESTATE.

VINCENT *v.* VINCENT.

1. WILLS—ADEMPTION BY SUBSEQUENT CONVEYANCE.
    A bequest to a child of a testator may be adeemed by a subsequent conveyance of real estate by the parent to the child.

2. SAME—ADEMPTION MATTER OF DONOR'S INTENT AT TIME OF GIFT.
    Ademption is a matter of intent; the intent which controls being that of the donor at the time of the gift, and not the intent of the testator at the time of executing his will.

3. SAME—CONSTRUCTION—GIFT CONSTRUED NOT TO BE ADEMPTION.
    In a suit for the construction of a will, that the convey-ance of a farm by a father to his son was intended to be a gift *inter vivos,* and not to affect the son's legacy under the father's will, *held,* to be conclusively established by competent evidence after disregarding testimony of the son and his wife as to matters equally within the knowl-edge of deceased.

[1]Wills, 40 Cyc. p. 1914; [2]Id., 40 Cyc. p. 1915; [3]Id., 40 Cyc. p. 1917; 40 L. R. A. (N. S.) 547; 28 R. C. L. 348.

4. SAME—"LOANS" CONSTRUED TO COVER BOOK ACCOUNTS AND ALSO
NOTES AS DEDUCTIBLE FROM SHARES.

> The meaning of the word "loans," as used in a father's
> will providing that loans to each child should be deducted
> from his share of the estate, in the absence of proof es-
> tablishing a contrary conclusion as to particular items,
> is construed to be broad enough to cover the accounts kept
> in testator's book (including those wrongfully removed
> therefrom, if any), and to also cover the notes given by
> each and not entered in the book account, but owing to the
> estate or paid by the estate after testator's death; and
> where a child has died since the execution of the will,
> items chargeable against him should be deducted from his
> share, which, under the statute (3 Comp. Laws 1915, §
> 13793), goes to his children.

5. SAME—INTEREST CHARGEABLE ON ADVANCEMENTS FROM TESTA-
TOR'S DEATH.

> Where a father's will provided that advancements to each
> child should be deducted from his share of the estate, for
> the purpose of equalizing said shares, interest at the
> legal rate is chargeable from the date of the testator's
> death, but not before, unless there is some provision in
> the acknowledgment or in the declaration of the advance-
> ment justifying an interest charge.

Appeal from Shiawassee; Collins (Joseph H.), J.
Submitted October 14, 1927.    (Docket No. 55.)    De-
cided January 3, 1928.

Bill by Alfred Vincent, executor of the last will of
George A. Vincent, deceased, against Eugene Vincent
and others for the construction of said will.    From
the decree rendered, defendant Eugene Vincent appeals.
Reversed and remanded.

*Matthews & Hicks,* for plaintiff.

*Pulver & Bush,* for appellant.

NORTH, J.    George A. Vincent executed his last will
and testament March 17, 1919.    He died May 3, 1925,

---

ᵃWills, 40 Cyc. p. 1923; ᵇId., 40 Cyc. p. 1925.

at the age of 72 years. After making certain pro-
visions in his will for his wife which never became
operative because her death occurred before that of
her husband, the testator directed the executor to sell
the real estate and thereupon the estate

"be equally divided among my heirs as follows; to wit:
(1) To my son Alfred Vincent, I give, devise and be-
queath one-sixth of the entire amount constituting the
aforesaid properties, after deducting from the amount
such loans as may have been made by me upon his
share of the estate."

A like provision was made for each of his five living
children and for a grandson who was the child of the
testator's deceased daughter. Alfred Vincent, as ex-
ecutor of the will, filed a bill in chancery by which
he seeks a construction of this will relative to the
meaning and application of the provision "after de-
ducting from the amount such loans as may have been
made by me upon his share of the estate." Various
matters have arisen incident to the settlement of this
estate which seem to have necessitated the filing of
this bill.

For many years before making his will, George A.
Vincent had kept a book in which entries were made
of various amounts of money and other items of per-
sonal property which he had given to his children. At
the head of each account the name of the child con-
cerned was written, and under the name appears these
words: "What I let them have." Some of the book
entries are in the handwriting of George A. Vincent,
others in the handwriting of his son Beryl. At the
time of the testator's death he had attached to some
of these accounts certain notes which he had paid for
the child whose name appeared on that account, and
also notes from such child payable to the testator.
These accounts were not regularly kept, and from them
it is evident that deceased was a man of very limited
education. The entries are not numerous, but they

go back as far as 1893, while some of the note trans-
actions bear date only a few months before testator's
death.    An account of this character was kept as to
each child.    The largest of the accounts (not includ-
ing notes) is a little over $300, and they are rather
uniform in amount.

After making his will, and in October, 1922, George
A. Vincent traded an equity in a house and lot in
Durand for a contract interest in a 40-acre farm near
Bancroft.    He paid the balance of the contract price
and secured a deed of the land subject to a mortgage
of $2,000 April 4, 1923.    On the 19th of October,
1923, he executed and delivered a warranty deed of
this 40 acres subject to the $2,000 mortgage to his
son Eugene Vincent and his wife, Martha.    This deed
was recorded December 19, 1923.    The executor and
other legatees contend that the value of this land should
be held to be a charge (*i. e.* an ademption) against
Eugene's legacy.    Eugene asserts that this conveyance
to him was a gift by his father and not intended as
an advancement against his share of the estate.    Be-
sides presenting this issue, the plaintiff seeks to secure
an adjudication as to the kind or character of trans-
actions that shall be taken into consideration in de-
termining the amounts of the respective bequests.    In
construing the clause under consideration, the trial
court held the testator in using the words *such loans*

"intended to include all advances which had been made
to any of his children, either as money loaned, personal
property given, or land purchased and deeded, there-
fore in the final distribution of the estate all such loans,
advances, and gifts shall be deducted from the share
of each child in the estate upon proper showing
being made as to the amount thereof in the probate
court."

The defendant Eugene Vincent appealed from this
decree.

Should the conveyance of real estate to Eugene be

held to be an advancement and *pro tanto* charged against his legacy? It is settled law in this State that a bequest to a child of a testator may be adeemed by a subsequent conveyance of real estate by the parent to the child.

"A residuary bequest to a child of a testator will be held to have been adeemed *pro tanto* by a subsequent conveyance of real estate to the child, where it clearly appears that such was the intention of the testator." *Carmichael* v. *Lathrop*, 108 Mich. 473 (32 L. R. A. 232).

Likewise, if it clearly appears that the subsequent conveyance was a gift and not intended as an advancement, it will be so construed. It will be decisive of this issue in this case either if it "clearly appears that the intent of the testator" was that Eugene's legacy should be adeemed *pro tanto* by the conveyance of the real estate; or if, on the contrary, it clearly appears the donor did not intend thereby to change the legacy, but instead conveyed the farm as a separate and independent gift to Eugene.

All authorities agree that ademption is a matter of intent. *Carmichael* v. *Lathrop, supra.* The intent which controls is that of the donor at the time of the gift, and not the intent of the testator at the time of executing his will. In this case there is neither an occasion nor a justification for questioning appellee's contention that at the time George A. Vincent made his will he intended each of his six legatees should share equally in his estate after being charged with advancements. But it does not follow from this that more than four years later, when he gave the deed to his son Eugene, his conduct was still prompted and controlled by the same intent. Clearly he had the same right to change his mind touching this matter that any testator has to change the terms of his will. From a careful consideration of this record, we think

it clearly and quite conclusively appears that the conveyance of the farm to Eugene was a gift *inter vivos* and did not affect his legacy. It is contended in behalf of the appellee that neither Eugene Vincent nor his wife, Martha, they being the grantees in the deed in question, should have been allowed to testify to matters equally within the knowledge of the deceased. 3 Comp. Laws 1915, § 12553. In the lower court this testimony was taken over objection, the court at the time reserving its ruling. There is nothing in the record which enables us to ascertain whether or not the trial judge in arriving at his determination considered this testimony. But, if we totally disregard the testimony of Eugene and his wife, as to matters equally within the knowledge of deceased, still we have the testimony of Mrs. Alice Middleton-Pryor, Sylvan Vincent, and Daniel A. Jones. Mrs. Pryor has no interest whatever in the subject-matter of this litigation. It was with her that George A. Vincent traded for the interest in the farm near Bancroft. Mrs. Pryor testified that the following occurred incident to this transaction:

"He (George A. Vincent) said he felt he was indebted to his son Gene, that he wanted to buy this farm for him because at the time he was at home he was not in a position to do much for him and he felt he did more for his other boys than he had for this one, that he felt he wanted to buy this farm for him where he was going to make his home. * * * He never said that Gene was going to pay him anything for it; he said he was going to give it to him. He told me that on different occasions. That is what he always said to me; he was buying it expressly for him. He did not say anything to me about Gene owing him anything for it or agreeing to pay him anything for it. He said Gene— of course I had never seen the man, I didn't know him— * * * In those transactions I had with Mr. George A. Vincent, Eugene Vincent was not present on any of these occasions. I thought Mr. George A. Vincent was a

pretty good business man, very sane mentally. * * * Mr. Vincent certainly told me he was going to give this to his son; one reason I remember that is because that is all he told me he wanted the farm for."

Sylvan Vincent is a son of Eugene and Martha Vincent and was 18 years of age at the time he testified in this case. The following is from his testimony:

"He (George A. Vincent) said he had given it (the farm) to him (Eugene Vincent); he said he presumed he had done more for him than the rest and he deserved it and he gave it to him."

Daniel A. Jones was the scrivener who prepared the will of George A. Vincent and also the deed from the father to the son. He testified in part as follows:

"The day I drove him (George A. Vincent) to look at the farm he talked quite a little bit about Gene. He said, 'He has had quite a little tough luck at Milford besides what he had done at home. He was the boy that stood by me through thick and thin and stayed with me until he was 25, and the rest went away before they were 21. I never paid him any wages during that time and I always felt I ought to do something for him. That is the reason I want this farm.' * * * I asked (at the time of preparing the deed) the usual question about the consideration and he said, 'Why, make it one dollar; I guess that will be enough.' * * * At the time we went over to see the farm he said he wanted to have Gene there with him; he was too far away. * * * He said, 'I am going to have a room there for myself. I am going to be there part of the time with Geney and part of the time with Beryl.' "

This witness also testified that after the deed had been signed by George A. Vincent and delivered to his son Eugene and after Eugene and his wife had left the room, Mr. George A. Vincent said: "What you have done here today I want you to keep to yourself; say nothing about it to any one."

The testimony of a contrary purport in this record consists principally in proof of admissions said to have been made by Eugene.     There is testimony that on one occasion in a conversation with Alfred, Eugene said, "Pa deeded me that farm up there, and I don't know what he charged me for it and really meant for it, and if you boys aren't satisfied I will deed it back and I will divide it up;" and at a later date, upon being asked by Alfred what he intended to do about deeding the place back "so that the appraisers could appraise it along with the other properties," Eugene said, "I don't know, Al, I haven't—I don't know what father intended to charge me for it or what he intended to do.     I haven't made up my mind."     Mrs. Emily Dodge, the widow of Lloyd Vincent, testified that on one occasion Eugene made an admission of similar import in her presence.     These alleged admissions are denied or admitted in somewhat different form by Eugene.     Alfred also testified, "He (George A. Vincent) always told me that he wanted each and all of his children to have exactly alike of his property. That $200 note I gave (January 17, 1919) is the last time I remember hearing him say that."

In considering the foregoing testimony in connection with the other proof in the case, it must be borne in mind that the will was prepared in the same office and by the same man as was the deed from the father to Eugene.     The conveyance of the land was necessarily by deed, witnessed by two persons and duly acknowledged.     Not only is there no proof of an intention at that time on the part of George A. Vincent that the value of this real estate should be deducted from Eugene's legacy, which might very readily and very naturally have been inserted in the instrument itself, but instead the deed recites that it was given for the nominal consideration of one dollar; and, with the evident intent of withholding knowledge of this

deed from the other children, the scrivener was cautioned as to secrecy. The testimony surrounding this whole transaction relative to the farm tends to establish that the deeding of this property to Eugene and his wife was an independent gift; that it was not intended to affect his legacy under the will, and it must be so held.

Eugene Vincent is the only party appealing, and the issue above decided is the only one stressed in his brief; but because it may be helpful to those charged with closing this estate, and because it may save future litigation between these parties, this will should be further construed to this extent: The meaning of the word "loans" as used in the various clauses of paragraph three, in the absence of proof establishing a contrary conclusion as to particular items, is broad enough to cover the accounts kept in the testator's books (including those wrongfully removed therefrom, if any); and to cover the notes not entered in the book account but owing to the estate or paid by the estate after the death of the testator. This holding conforms to the meaning the testator intended to give this word as indicated by his declaration made at the time he executed his will, as follows: "The loans consist of notes and accounts, a little of both. The book was what I want them to settle by." Another reason for including the notes above mentioned is that the testator attached these various notes to the respective accounts in the book and evidently considered them a part of the book account.

Because of his death since the execution of the will, the share of Lloyd Vincent will go to his children. 3 Comp. Laws 1915, § 13793. As a legatee under this will, testator's grandson, Raymond Atherton, stands in the place of his mother, Pearl Vincent Atherton. Therefore in fixing the amount of each of these portions of the estate, the same method should be

241—Mich.—22.

followed as though Lloyd and Pearl were living, *i. e.*, the items chargeable to them respectively should be charged against these respective shares.

For the purpose of equalizing shares on the distribution of this estate, interest at the legal rate should be computed on advancements from the date of the testator's death, but not before, unless there is some provision in the acknowledgment or in the declaration of the advancement justifying an interest charge. *Sprague* v. *Moore*, 130 Mich. 92.

A decree may be entered in this court in accordance herewith and the record remanded to the circuit court of Shiawassee county with directions to certify the case back to the probate court for further proceedings therein. The appellant will have costs in this court taxed against the estate.

FLANNIGAN, C. J., and FELLOWS, WIEST, CLARK, MCDONALD, BIRD, and SHARPE, JJ., concurred.