### DOMZALSKI *v.* DOMZALSKI.

1. EQUITY—JURISDICTION.

Suit commenced by bill to construe a will, for an accounting and specific performance of a written instrument in which defendants sought cancellation of a written instrument was within jurisdiction of court of equity, and such court, having jurisdiction, will retain it for purpose of granting complete relief.

2. WILLS—ADVANCEMENT—UNNAMED AMOUNT.

Instrument signed by son and wife whereby he acknowledged indebtedness to his father in an unnamed amount and released representatives of father's estate from distributive share thereof in such amount in consideration of father's present cancellation of son's indebtedness *held*, to indicate an intention on part of father who had previously made will leaving estate to children in equal shares to make an advancement rather than gift, the amount being subject to proof.

3. SAME—ADVANCEMENTS—INTENT—STATUTES.

Instrument signed by son and his wife wherein he acknowledged indebtedness to his father and released distributive share of father's estate *pro tanto* evidenced an intent in accord with statute pertaining to advancements to child of an intestate although such statute would not be applicable to estate of a testator (3 Comp. Laws 1929, § 13448).

4. SAME—ADVANCEMENTS—INTENT—EVIDENCE.

Intent on part of testator that instrument, signed by son whereby he released representatives of father's estate from his distributive share thereof in consideration of father's cancellation of indebtedness, was considered an advancement was evidenced by testamentary distribution wherein testator directed that debts due from his children to him were to be deducted from their share, by entries in his carefully kept diary and his account books.

5. SAME—ADEMPTION—INTENT.

Pursuant to testator's intent, his conveyance of house and lot to his son and his wife constituted an ademption *pro tanto* of son's share in residue under will to extent of indebtedness previously owed testator thereon under land contract.

6. SAME—ADEMPTION—INTENT.

    Ademption is a matter of intent.

7. SAME—ADVANCEMENTS—STATUTES.

    Statute pertaining to advancements, which applies only to in-
    testate estates, does not preclude a testator from expressly di-
    recting by will that any advancements during lifetime, or
    any indebtedness owing him by a beneficiary at his death,
    shall be deducted from beneficiary's share in testator's es-
    tate (3 Comp. Laws 1929, §§ 13445–13450).

8. SAME—ADEMPTION BY SUBSEQUENT CONVEYANCE.

    A bequest to a child of a testator may be adeemed by a subse-
    quent conveyance of real estate by the parent to the child.

Appeal from Wayne; Murphy (George B.), J.
Submitted April 10, 1942. (Docket No. 19, Calendar
No. 41,913.) Decided October 5, 1942. Rehearing
denied November 25, 1942.

Separate bills by Thaddeus Victor Domzalski,
one of the executors of the estate of Michael Dom-
zalski, deceased, and others against Wladislaus
Henry Domzalski and others for the construction of
a will, an accounting, and other relief. Defendant
Mary Sochalski made party plaintiff. Cross bill by
defendants Wladislaus Henry Domzalski and Mary
Domzalski against plaintiffs to have an agreement
declared null and void, to have certain real estate
decreed to be the property of defendants free from
incumbrances, and to enforce distribution under
will of Michael Domzalski, deceased. Decree for
plaintiffs. Defendants appeal. Affirmed.

*Stanley J. Domzalski,* for plaintiffs.

*Riseman, Lemke & Piotrowski,* for defendants.

BOYLES, J.  Plaintiffs, as executor, devisees and
legatees under the will of one Michael Domzalski,
deceased, filed this bill of complaint against Wladis-
laus Henry Domzalski (hereafter referred to as

Walter Domzalski), son of said testator, and his wife to construe the will of Michael Domzalski with reference to deducting from Walter Domzalski's share of the residue of said estate certain indebtedness alleged to be owing by him to Michael Domzalski; for an accounting of the same; and for specific enforcement of a certain instrument signed by Walter Domzalski acknowledging such indebtedness (hereafter referred to as exhibit 7). Walter Domzalski and wife answered and filed a cross bill asking that said instrument (exhibit 7) be declared null and void, that they be decreed the owners in fee simple of certain real estate referred to therein, and that the executors of the estate be directed to pay Walter Domzalski such sums as might be found due him under the terms of the will. The court below, after hearing, decreed that Michael Domzalski during his lifetime had advanced $12,700 to the defendants, that said indebtedness with accumulations of unpaid interest and taxes amounted on June 18, 1938, to $19,071.79, which sum should be deducted from the distributive share of Walter Domzalski under the will. From this decree, defendants appeal.

Defendants claim at the outset that the bill of complaint is solely for a money decree wherefore plaintiffs have an adequate remedy at law. The bill involves in some degree the construction of a will, an accounting, and either the specific enforcement or the cancellation of a written instrument. The relief sought by defendants under their cross bill brings the case within the jurisdiction of a court of equity. Equity, having jurisdiction, will retain the case for the purpose of granting complete relief.

On February 28, 1935, Michael Domzalski executed a will devising and bequeathing in seven equal shares the residue and remainder of his estate (after certain specific legacies) to his six living children,

together with an equal share to two minor children of a deceased daughter. Walter Domzalski is one of said residuary legatees. Michael Domzalski died June 14, 1939, and his will has since been admitted to probate. It contains the following provisions:

"Inasmuch as all of my living children are indebted to me in various amounts at the date hereof, the amount of such indebtedness shall be added to the total valuation of my estate, which then shall be divided into seven (7) equal shares or portions, one such share or portion for each of my six living children, and the seventh share or portion to be equally divided between the two granddaughters, Joan Pawlowski and Genevieve Pawlowski, minor daughters of my deceased daughter, E. Stanislawa Pawlowski. * * *

"The indebtedness of each child due me at the time of my death, shall be deducted from the share or portion of such child, but in the event that the amount of such individual indebtedness of any one of my said children to my estate shall exceed the amount of the share or portion that such child shall be entitled to under the provisions hereof, then, in that event, such child shall pay the difference between his or her bequest and his or her indebtedness to my estate to the executors of this my last will and testament, and such amount shall be equally divided between all my living children."

In September, 1929, Walter Domzalski had applied to his father, Michael, for financial help to erect a home on two lots in Detroit which he and his wife were buying on land contract. Michael Domzalski advanced $12,700 to the defendants at that time, taking title to the two lots in his own name and entering into an executory land contract as vendor with the defendants as vendees providing for payment in instalments, with interest, over a five-year period. Defendants failed to make the payments.

Taxes accrued which were paid by Michael and added to the land contract, along with accrued interest. Michael kept careful and accurate ledger accounts of his business transactions and his books showed a balance due him from defendants on January 1, 1933, of $15,368.84. Subsequently Michael paid some taxes on the property. In April, 1938, Michael Domzalski demanded payment from the defendants of the balance due him under the contract, stating that the accumulated principal, interest and taxes amounted to $22,000. To aid in securing payment he assigned his vendor's interest in the contract to his son Thaddeus. Family conferences followed and Thaddeus reassigned the contract vendor's interest to his father; and the defendants herein also assigned their vendees' interest in said property to Michael Domzalski. The conclusion reached by Michael Domzalski was to convey the house and lot to defendants herein but retain the adjacent vacant lot, on the understanding that defendants' indebtedness to him would be held against them and deducted from Walter's share of his estate at his death. Three of Michael's sons, all of them attorneys, were instructed to prepare such an agreement, and finally on June 18, 1938, Michael Domzalski executed and delivered to Walter a deed of the house and lot · referred to, and the defendants herein signed, acknowledged, and delivered to Michael Domzalski an instrument in writing (exhibit 7), which is now relied upon by plaintiffs as evidencing an intention to consider the indebtedness of defendants as an advancement to be deducted from Walter's share in his father's estate. This instrument, after reciting that defendants herein were on that date indebted to Michael Domzalski (in an unnamed amount), "which said indebtedness is hereby confessed and acknowledged by the parties of the second

part,'' and that said indebtedness arose by virtue of the money advanced by Michael in constructing the residence heretofore referred to, and in payment of taxes and accumulations of interest, and after further reciting that defendants had assigned all their right, title and interest in the land contract to Michael Domzalski and that Michael had deeded to the defendants the house and one lot, then provided:

"It is further mutually agreed that for and in consideration of the cancellation of the indebtedness as aforesaid and of the conveyance hereinbefore set forth, the said Walter H. Domzalski, of the second part, for himself, his heirs, executors, administrators and assigns, does by these presents remise, release, quitclaim and forever discharge the said first party and his heirs, executors, administrators and assigns, from any distributive share he may have in the estate of the said first party to the amount hereinbefore set forth in paragraph 2 hereof, and of and from all actions, claims and demands whatsoever, for or by reason thereof, or of any other act, matter, cause or thing whatsoever.''

In the paragraph 2 thus referred to, the amount of the indebtedness was left blank. Michael was subsequently asked to fix and determine the amount but did not do so. The defendants never repaid Michael Domzalski any part of the $15,368.84 that appeared on his ledger book as the amount of their indebtedness as of January 1, 1933. The court below computed the interest, and taxes paid by Michael, from said date and, after allowing certain deductions for the value of the vacant lot retained by Michael, found that it aggregated $19,071.79. This amount was used as the basis for the decree.

The defendants claim that because Michael Domzalski failed to indicate the amount of the indebted-

ness in exhibit 7, and because exhibit 7 was not signed by Michael, it is void and of no effect. We do not agree with this contention. Exhibit 7 is a definite acknowledgment in writing by defendants that they were at that time indebted to Michael Domzalski and in express terms is a release of any distributive share in his estate to the extent of the indebtedness. It negatives any indication of an intent on the part of Michael to make a gift to defendants of the house and lot referred to. It clearly indicates an intent on the part of both Michael and the defendants herein that the indebtedness referred to should be deducted from whatever share Walter might ultimately receive from Michael's estate. The acknowledgment in writing signed by defendants released Michael Domzalski, "his heirs, executors, administrators and assigns," from any distributive share Walter might have in his estate to the amount of Walter's indebtedness, this amount left undetermined by the instrument itself. The apparent intent was to consider the indebtedness in the nature of an advancement to Walter Domzalski out of his father's estate. The amount is subject to proof and unless the acknowledgment in writing evidences an intention to consider the money as an advancement and not a gift, it is meaningless. We see no persuasive reason why a testator should be denied the right to make such a provision in his will, or a legatee precluded from acknowledging that his indebtedness to the testator should be considered an ademption *pro tanto* of his distributive share in the estate. In making this arrangement, the testator obviously had in mind the statutory provisions applying to intestate estates because the will closely follows the statute. 3 Comp. Laws 1929, § 13448 (Stat. Ann. § 26.989), reenacted in the probate code of 1939 (Act No. 288, chap. 2, § 90, Pub. Acts 1939

[Comp. Laws Supp. 1940, § 16289–2 (90), Stat. Ann. 1941 Cum. Supp. § 27.3178 (160)]), declares that all gifts and grants shall be deemed to have been made in advancement if acknowledged in writing as such by the child or other descendant. While the statute is not controlling of the case at bar, the intent of the parties is in accord with it.

Other evidence in the record before us supports this conclusion. The will indicates that Michael intended that his accumulations of a lifetime should be passed on equally to his six children and the children of his deceased daughter without favoritism. To that end he directed that any indebtedness due him at his death from any of them should be deducted from his or her share of the estate. All of his children were indebted to him in varying amounts and the will merely applies the usual rule as to advancements, which are added to the total valuation of the estate, the residue divided according to the will, and the indebtedness of each child deducted from his or her share. That Michael intended such indebtedness to be considered in the nature of advancements is further shown by a diary which he carefully kept for many years, in which he wrote shortly before deeding the house and lot to defendants and receiving exhibit 7 in return, as follows:

"Walter will get his home back, but with only one lot, and will have to sign off from all participation after me."

Such an intent is also shown by his methodical keeping of books and ledgers of account in which were entered all his financial transactions, showing the moneys advanced by him to each of his children, including Walter's indebtedness.

The conveyance of the house and lot to defendants was an ademption *pro tanto* of Walter's share in the residue of Michael's estate under the will to the extent of the indebtedness. This clearly appears to be the intention of the testator, and ademption is a matter of intent. *Carmichael* v. *Lathrop,* 108 Mich. 473 (32 L. R. A. 232) ; *In re Vincent's Estate,* 241 Mich. 329.

It has been argued that the law of advancements, being statutory, applies only to intestate estates. The statute (3 Comp. Laws 1929, §§ 13445–13450 [Stat. Ann. §§ 26.986–26.991], reenacted in Act. No. 288, chap. 2, §§ 87–92, inclusive, Pub. Acts 1939 [Comp. Laws Supp. 1940, §§ 16289–2 (87)–16289–2 (92) ; Stat. Ann. 1941 Cum. Supp. §§ 27.3178 (157)– 27.3178 (162), inclusive]) does not preclude a testator from expressly directing by will that any advancements during lifetime, or any indebtedness owing to him by any beneficiary at his death, shall be deducted from the share of such beneficiary in his estate. Advancements of this nature, and ademption of a share in the residue by reason of indebtedness, have heretofore been before this court in connection with testate estates and the construction of wills. In *Re Bresler's Estate,* 155 Mich. 567, this court had under consideration a will which gave a certain specific legacy to a daughter as her share of the estate, "of which sum shall be deducted the amount she may be owing on my books." The amount of the indebtedness, as in the case at bar, was thus left open to proof. The books of account were in the handwriting of the testator and were held to be properly received in evidence. This court held that the intention of the testator must prevail, that the book items were established as proper charges against the legacy, and in so holding said (p. 575) :

"While the term 'advancement' is generally used in cases of intestacy, the term is also used as applicable to cases of wills. Where in either event the intention is clear that the sums advanced should be deducted from the amounts due the devisee under a will, or heir in case of intestacy, that intention must prevail."

*In re Vincent's Estate, supra,* in many respects is similar to the instant case. In that case the will directed that the estate be equally divided among the testator's six children after deducting from the amount such loans as may have been made to each. For many years before making his will, the testator had kept a book in which entries were made of various amounts he had given his children. The testator during lifetime had given a deed of certain real estate to one of his sons and the son's wife. The executor and other legatees (as in the case before us) contended that this should be held a charge against the grantee, an ademption of the son's legacy. The son asserted that the conveyance was a gift and not intended as an advancement against his share of the estate. This court held that the testimony showed the deed was intended as a gift. In so holding, however, the rule was stated as follows:

"It is settled law in this State that a bequest to a child of a testator may be adeemed by a subsequent conveyance of real estate by the parent to the child.

" 'A residuary bequest to a child of a testator will be held to have been adeemed *pro tanto* by a subsequent conveyance of real estate to the child, where it clearly appears that such was the intention of the testator.' *Carmichael* v. *Lathrop,* 108 Mich. 473. (32 L. R. A. 232).

"Likewise, if it clearly appears that the subsequent conveyance was a gift and not intended as an advancement, it will be so construed. * * *

"All authorities agree that ademption is a matter of intent. *Carmichael* v. *Lathrop, supra.*"

Defendants claim that their indebtedness was cancelled when they assigned to Michael Domzalski their vendees' interest in the property, he then holding both the title and the cancellation of their land contract as vendees. Were this the only circumstance, and had the transaction ended there, that might be·true. But when Michael deeded the house and lot to defendants, they gave him a written acknowledgment executed and delivered when they received the deed that, in consideration of the cancellation of such indebtedness and the conveyance of the house and lot to them, they thereby released and discharged Michael Domzalski, "his heirs, executors, administrators and assigns," from any distributive share in his estate to an amount left undetermined by the instrument, and thus open to proof. We agree with the conclusion reached by the trial judge that it was the intention of Michael Domzalski that the indebtedness Walter and his wife owed him should be deducted from Walter's share of his estate. This intention must control.

Affirmed, with costs to appellees.

CHANDLER, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.