FRED AUSTIN, APPELLEE, V. DONALD AUSTIN, BESSIE AUSTIN ALBEE ET AL., APPELLANTS.

22 N. W. 2d 560

FILED APRIL 5, 1946. No. 31998.

*Moyer & Moyer* and *Jane E. Moyer*, for appellants.
*R. A. Johnson* and *H. G. Wellensiek*, for appellee.
Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE,

YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is a suit in equity to construe the will of Edwin F. Austin, deceased, in which he made provision for the education of his grandchildren, Donald Austin and Bessie Austin (now Bessie Austin Albee), and to declare the specific legacies providing for the education of the two grandchildren to have been fully satisfied and adeemed by the testator, Edwin F. Austin, and his surviving wife, Adelaide Austin, in their lifetime; and to decree that the two defendant grandchildren had no right, title, or interest in and to the real estate described in the plaintiff's petition, and to quiet title thereto in the plaintiff.

The defendants, by cross-petition, allege that paragraph 3 of the will in controversy creates a charge and lien upon all of the real estate of which Edwin F. Austin died seized, in the amount of $2,000 in favor of the defendants; further allege the estate of Edwin F. Austin, deceased, has been duly administered in the county court of Madison County; that the plaintiff accepted the devise of real estate pursuant to the terms of the will and subject to the lien and charge thereon created by the will. The defendants pray that the real estate described in the plaintiffs petition be impressed with a first lien in the amount of $2,000 and interest in favor of the defendants, and the plaintiff be ordered and directed to pay the legacies provided for in the will.

The reply contained certain facts relating to the full settlement and ademption of the legacies, and renewed the relief sought for by the plaintiff in his petition. The court found generally for the plaintiff and against the defendants, and entered judgment that the will of Edwin F. Austin, deceased, be contrued to have created specific legacies providing educational benefits for the defendants, and to have charged the realty devised plaintiff with payment thereof; that the defendants have received all benefits intended by the testator, and the legacies were fully satisfied and adeemed during his lifetime, and have lapsed; that

the plaintiff is not obligated to pay or expend money by reason thereof, and the real estate described in the petition vested in him, and the charges against it are unenforceable and nonoperative; quieted title to the real estate in the plaintiff and dismissed the cross-petition of the defendants. Upon the overruling of the motion for new trial defendants appeal.

The defendants contend the court erred in finding that the legacies had been satisfied and adeemed. In this connection, it is the further contention of the defendants that the doctrine of ademption may not apply unless the testator stood in loco parentis to the defendants, and no such relationship existed in the instant case. It is therefore necessary to set out the material facts respecting this phase of the case.

The testator, Edwin F. Austin, came from Illinois to Nebraska in 1878, and in 1879 acquired title to a quarter section of land in Madison County. In 1916, he sold 80 acres of the quarter section of land to his son, Fred Austin, the plaintiff, for $8,000, using the proceeds of the sale to pay encumbrances against the land, and retained 80 acres thereof clear of encumbrances. He also owned some land in Frontier County. In 1905, due to his health, he moved to Newman Grove where he purchased a home and obtained employment as a clerk, and held various other jobs until his death March 20, 1928.

The defendant, Donald Austin, grandson of the testator and nephew of the plaintiff, was born on June 22, 1908. During 1911 his mother died, when he was three years of age. He then went to live with his grandparents. When he was five years of age he started in the public schools of Newman Grove and remained in school until he reached the eleventh grade. In June 1924, he went to California where his father, Clyde E. Austin, a son of the testator and who had twice remarried, lived, and stayed with his father approximately six months, thereafter returning to Newman Grove to again live with his grandparents. In 1927, when he was 18 years of age, he went to Omaha

where he obtained employment. Very shortly after his grandfather's death he returned to Newman Grove to live with his grandmother. He was living with her when he was married in 1933, and in 1935 left for California where he became employed in the grocery business.

Bessie Austin, daughter of Clyde E. Austin, granddaughter of the testator and Adelaide Austin, niece of the plaintiff and sister of Donald Austin, was two years of age when her mother died. She lived with her father in Colorado until she reached the third grade. When she was eight years old, in about 1917, she left Colorado to live with her grandparents in Newman Grove, and attended the public schools regularly until she graduated from high school in 1926. After her graduation she went to Omaha where she obtained employment. She married March 3, 1928, and resides in Kansas where her husband is engaged in the grocery and meat business.

The school records designated the testator as parent.

Both defendants testified to certain chores and work each did for the grandparents, and of employment obtained by them outside the home, the wages received therefrom being used by them for clothing and school supplies. No money was paid by the testator for tuition or school books, the same being furnished by the school system. There is no denial by the defendants that the testator furnished each of them with lodging, clothes, and food, and on occasions gave them spending money. In fact, his home was the only home the defendants had. There is some evidence that the father, Clyde E. Austin, sent money on occasions to assist in the defendant's support, but in what amounts and how often, are not shown by the record.

The defendant, Donald Austin, was 37 years of age and the defendant, Bessie Austin Albee, was 36 years of age at the time of the trial.

Do the foregoing facts disclose that the testator stood in relation of loco parentis to the defendants, his grandchildren?

"A person standing in loco parentis to a child is one

who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. The assumption of the relation is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relation." 46 C. J., Parent and Child, § 174, p. 1334. And on page 1336, section 176, it is said: "The above rules apply to a grandparent standing in loco parentis to his grandchild; * * *." See, 39 Am. Jur., Parent and Child, § 61, p. 697; § 63, p. 701. And for factual situation showing the relationship of loco parentis, see, also, Nelson v. Johansen, 18 Neb. 180, 24 N. W. 730; Clasen v. Pruhs, 69 Neb. 278, 95 N. W. 640.

The modern texts and cases adhere to the foregoing rule and are in keeping with Powys v. Mansfield, 14 Eng. Ch., 3 Mylne & Craig 359: "The proper definition of a person in loco parentis to a child is a person who means to put himself in the situation of the lawful father of the child, with reference to the father's office and duty of making a provision for the child." And, also, see Pym v. Lockyer, 46 Eng. Ch., 5 Mylne & Craig 27, where it was held that the facts disclosed that the grandfather stood in relation of loco parentis to grandchildren, although the father was living.

We conclude the testator and his wife had the exclusive care, control, custody, education, and maintenance of the defendants during their minority, and stood in the relation of loco parentis to them.

We next consider the devise that gave rise to the controversy, paragraph 3 of the will, in the following words: "I give, devise and bequeath to my dear wife, Adelaide Austin, the use and enjoyment of all my real estate, to have, to hold, to use and enjoy during her natural life and after her death, I give, devise and bequeath all of said real estate to my son, Fred Austin, on condition that he pay to my son, Clyde E. Austin, whom I have helped so much during my lifetime, the sum of One Dollar, and also the sum

of One Dollar to my grand-son, Wayne Austin; a condition also being that the said Fred Austin use and expend the sum of One Thousand Dollars in educating my grandson, Donald Austin, and also the sum of One Thousand Dollars in educating my grand-daughter, Bessie Austin, said two grand-children to be educated in the same manner as said Fred Austin would educate his own children. When the said Fred Austin has paid and expended the sum of Two Thousand and two Dollars as above stipulated, all of my real estate shall belong to the said Fred Austin."

"In the construction of a will, the court is required to give effect to the true intent of the testator so far as it can be collected from the whole instrument, if such intent is consistent with the rules of law, * * * ." Martens v. Sachs, 138 Neb. 678, 294 N. W. 426. See, also, Lehman v. Wagner, 136 Neb. 131, 285 N. W. 124; Ingraham v. Ingraham, 145 Neb. 330, 16 N. W. 2d 445.

Another rule pertinent hereto is that the intention to adeem a legacy may be shown by parol evidence, including that of the testator's conduct subsequent to the execution of the will. See In re Estate of Wantz, 137 Neb. 307, 289 N. W. 363.

With the foregoing rules in mind, the following additional facts, as disclosed by the record, are material: The plaintiff, Fred Austin, named in paragraph 3 of the will heretofore set out, has lived in Madison County for 65 years, and has engaged in farming for a number of years. He would visit his parents, the testator and Adelaide Austin, on occasions of once every week or two or three weeks, and would bring them meat, cream, vegetables, and cobs for fuel, on such occasions. In addition to his own land he rented 80 acres of the testator's land and paid share rent.

The plaintiff had five children, four of whom finished the eighth grade in the rural schools and one completed the high school course at Newman Grove. At the time of the trial the oldest of these children was 42 and the youngest 32 years of age.

Adelaide Austin, the recipient of the life estate, died February 27, 1943. This action was brought October 16, 1943.

On October 1, 1918, the day the will was made, the defendant, Donald Austin, was ten years of age, and the defendant, Bessie Austin, was nine years of age. Thereafter Donald Austin received more than six years of care, clothing, support, maintenance, and schooling from the testator, and Bessie Austin received eight years of like kind of benefits from him. It is obvious the testator contemplated that the defendants would have the advantages the Newman Grove school system afforded them, and equal educational opportunity with his son Fred's children. This is what he provided for and intended. He did not intend that after these grandchildren had grown to maturity, married and become settled and established in business, when they were 37 and 36 years of age respectively, a thousand-dollar cash bequest to each, with interest thereon, would be required for educational purposes.

It is significant to note that the cross-petition setting forth their claims to the legacies, was filed more than 16 years after the testator's death.

If the testator intended a thousand-dollar cash legacy to each of these defendants, he would have so stated in his will. Without doubt, the care and maintenance afforded by the testator to the defendants after the will was made exceeded the amount of one thousand dollars for each, and it is apparent that the defendants had more schooling than the plaintiff's children.

The next question to determine is, does the doctrine of ademption apply?

In 28 R. C. L., Wills, § 338, p. 344, ademption is defined as follows: "Ademption has been defined as the extinction or satisfaction of a legacy by some act of the testator, which indicates either a revocation of or an intention to revoke the bequest. When ademption takes place because of the act of the testator making a gift to the legatee of property equivalent to the legacy, the usual theory is that

the legacy has been satisfied rather than revoked." See, also, 69 C. J., Wills, § 2199, p. 998. And, as stated in 4 Page on Wills, (3rd ed.) § 1513, p. 355: "In modern law the term ademption has two distinct meanings. It is used with reference to the act of the testator in paying, to the legatee, in the lifetime of the testator, a legacy which the testator has given to the legatee by will, or in satisfying such legacy by giving, in place thereof, something of value."

Ademption is a matter of intent. Carmichael v. Lathrop, 108 Mich. 473, 66 N. W. 350, 32 L. R. A. 232; In re Vincent's Estate, 241 Mich. 329, 217 N. W. 65.

In the case of Hine v. Hine, 39 Barb. (N. Y.) 507, it is said: "When a legacy is given for a particular purpose specified in the will, and the testator, during his life, accomplishes the same purpose, or furnishes the intended legatee and beneficiary with money for that purpose, the legacy is satisfied. (I Roper, 365. Debeze v. Mann, *supra* [2 Bro. Ch. Cas. 166]. Rosewell v. Bennett, 3 Atk. 77. Carver v. Boles, 2 R. & M. 301. * * *.)"

And, in the case of American Trust & Banking Co. v. Balfour, 138 Tenn. 385, 198 S. W. 70, L. R. A. 1918D 536, it is said: " 'Ademption' of a specific legacy is the extinction, alienation, withdrawal, or satisfaction of the legacy by some act of the testator by which an intention to revoke is indicated; the doing of some act with regard to the subject-matter which interferes with the operation of the will."

In the case of In re Estate of Wantz, *supra*, it is said: "This intention to adeem a legacy may be shown by parol evidence, including that of the testator's conduct subsequent to the execution of the will, * * *. When the evidence shows such an intention on the part of the testator to adeem or satisfy a legacy subsequent to the execution of the will, such intention is controlling, and the burden of disproving such intention is on the party denying it."

Determining that the legacies set out in the third paragraph of the will are specific legacies for a designated purpose, under the foregoing holdings it is clear that the doctrine of ademption applies under the facts in the in-

stant case. The trial court was not in error in holding the doctrine of ademption applied. Neither is there merit to the contention made by the defendants that the testator made no change in his will, even though the defendants had completed their schooling in Newman Grove almost two years prior to his death.

Unrevoked specific bequests are necessarily common to all cases invoking the doctrine of ademption. Even publication or reexecution of adeemed testamentary provisions does not revive them. See 69 C. J., Wills, § 2231, p. 1030.

There is a further contention by the defendants that the final decree of the county court in the probate proceedings is conclusive of plaintiff's acceptance of the devise burdened with the obligation to pay legacies. The construction of the devise by a probate court is solely for the guidance of legal representatives of the estate, and is not conclusive of a person claiming under such devise. See Hahn v. Verret, 143 Neb. 820, 11 N. W. 2d 551. See, also, Annable v. Ricedorff, 140 Neb. 93, 299 N. W. 373; Youngson v. Bond, 69 Neb. 356, 95 N. W. 700.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.