IN RE ESTATE OF ERNEST TRAVIS, DECEASED. HOWARD E. TRAVIS, APPELLANT, v. MANFORD TRAVIS, APPELLEE.

202 N. W. 2d 185

Filed November 17, 1972. No. 38450.

Wright & Simmons, John F. Wright, and John F. Simmons, for appellant.

Van Steenberg, Winner & Brower, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

This is an action to construe the will of Ernest Travis.

The sole issue is whether an inter vivos cancellation of certain indebtedness from one son during the lifetime of the testator should be accounted for and included in the division and distribution of the decedent's estate. The district court construed the will to require accounting for the indebtedness of $15,000 in the distribution of the property of the estate. The debtor son has appealed. We reverse the judgment of the district court.

Ernest Travis executed a will on September 19, 1966, while in the hospital, and died less than 4 months later on January 17, 1967. The decedent was survived by his two sons, Manford Travis and Howard E. Travis. At the time of execution of the will, Howard E. Travis was indebted to the testator in the sum of $15,000. The indebtedness was represented by three promissory notes, one for $5,000 dated July 21, 1964; one for $6,000 dated July 27, 1964; and the third for $4,000 dated October 27, 1965. One note was signed by Howard E. Travis, one was signed by him and his wife, and one by his wife only. All notes bore interest at the rate of 5 percent per annum, and all were for sums advanced as loans and paid to Howard E. Travis by the decedent, Ernest Travis. Manford Travis, the decedent's other son, was not indebted to his father in any amount.

Relevant portions of the testator's will provided: "3) I direct my executors, hereinafter named, to divide the residue of my estate into two shares, designated Share A and Share B, which shall be of equal value * * * In the division of said estate, I direct that the values used shall be as are finally accepted by the Director of Internal Revenue in the audit of my estate tax and gift tax returns. In the making of such division, I do further direct that my executors shall take into account property owned by me and either of my sons as joint tenants with right of survivor, or by me as Trustee for the benefit of either of my sons and such of the gifts made by me after the 18th day of December, 1961,

as are reported on the Federal Gift Tax return. The values of such gifts shall be such as is shown on the gift tax return as it is finally audited and approved by the Director of Internal Revenue. * * *

"4) To my son, Howard E. Travis, I hereby devise and bequeath Share A, and to my son, Manford N. Travis, I hereby devise and bequeath Share B.

"5) In the making of the division of the residue of my estate as aforesaid, I direct that no accounting shall be taken of any moneys due or owing me by either of my sons or any gifts made to them which are not reported on a gift tax return; such obligations and such advances shall not be considered as a part of my estate for any purpose whatsoever, and such obligations, if any, are hereby satisfied and no effort shall be made to collect the same."

After returning home from the hospital about October 1, 1966, the testator made a substantial division of his property between his sons. At about the same time, the testator advised his son, Howard E. Travis, and his wife that he was going to forgive the promissory notes. The notes were delivered to the wife of Howard E. Travis and later the testator marked the notes paid.

Ernest Travis never made a gift tax return. Two years after the testator's death, a federal gift tax return was prepared and filed by the executors which showed the gifts made by the testator when he substantially divided his property on or about October 1, 1966, as well as other gifts in 1966, and included "cancellation of indebtedness Howard Travis $15,000." The items shown were reported on the inventory of the estate and all described as "Property transferred in contemplation of death." They were all accounted for and included in making the division of the residue of the estate. There is no evidence in the record outside the will concerning what the testator's intentions were, other than the testator's conduct in dividing the property and canceling the indebtedness.

The district court determined that the testator intended to treat his two sons equally; that gifts includable on a gift tax return were to be considered in the distribution and division between his sons; and that the cancellation of the $15,000 indebtedness of Howard E. Travis was a gift and was required to be taken into consideration in the final distribution of the assets of Ernest Travis, deceased, and charged to the share of Howard E. Travis.

In construing a will, a court must ascertain the intent and purpose of the testator as disclosed by the language of the will. The object and purpose of the court is to carry out and enforce the true intention of the testator as shown by the will itself in the light of attendant circumstances under which it was made. Berning v. National Bank of Com. Tr. & Sav. 176 Neb. 856, 127 N. W. 2d 723; Katt v. Claussen, 174 Neb. 603, 118 N. W. 2d 1002.

The problem here is complicated by the fact that the testator, in contemplation of death, made a substantial division of his property and canceled the indebtedness after the execution of the will and before his death. There is no disagreement that if the testator had not forgiven and canceled the indebtedness during his lifetime, the indebtedness would have been satisfied at the testator's death under the specific terms of the will. No accounting was to be taken in that event nor was the indebtedness to be considered a part of his estate for any purpose. The language of paragraph 5 specifically directs that result and also affirmatively demonstrates the intention of the testator to treat his sons unequally insofar as any obligations or indebtedness were concerned.

Paragraph 5 of the testator's will treats indebtedness or obligations as distinct from gifts. It directs that no accounting be taken of "any moneys due or owing me by either of my sons *or* any gifts made to them which are not reported on a gift tax return; * * *." The next

portion of the sentence states that "such obligations *and* such advances shall not be considered as a part of my estate for any purpose whatsoever, * * *." Here again "obligations" and "advances" are separately classified. The final portion of the paragraph, all of which is in one sentence, reads: "and such *obligations,* if any, are hereby satisfied and no effort shall be made to collect the same." Here obligations alone are referred to and not gifts of any kind. There can be no real question but that the testator provided that any obligations or indebtedness of either son were intended to be satisfied under the terms of the will without any accounting for it in the division of the residue.

We note also that the pleadings here admit that, excluding the cancellation of indebtedness involved here, the gifts made by the testator prior to his death totaled $42,675.94 to Howard, and $42,474.85 to Manford. All these gifts were in 1966. In addition, the testator canceled Howard's indebtedness of $15,000. The testator's conduct in canceling the indebtedness of Howard and making substantially equal gifts of other property to both sons seems clearly intended to carry out the testamentary plan provided for by the will, rather than to change it. The burden of proving an intention to change the testamentary plan ought to be upon the party claiming the change of intention.

The foundation of appellee's position is that the testator, by canceling the indebtedness of Howard, technically changed its nature from indebtedness to a gift. The argument then is that the conversion was with the intention and knowledge that it would effectively change the distribution of his testamentary assets under the language of the will. We can find no such intention established by his conduct. We think instead the evidence establishes a desire to carry out the testamentary intent and plan set out in the will.

There is no evidence that the testator had ever made a gift tax return of any kind or that he knew that can-

cellation of this indebtedness constituted a gift and was reportable. One fact is quite clear on the face of the will itself. The testator intended to have any indebtedness of his sons to him forgiven. The fact that he carried out that intention during his lifetime is consistent with the testamentary plan shown in his will. It should not be interpreted as indicating a change of intention.

While the situation here is not identical with the situation involved in the ademption of a legacy, it is analogous. The burden of proving an intention to change the testamentary plan is on the party claiming the change of intention. See, In Re Estate of Wantz, 137 Neb. 307, 289 N. W. 363; Austin v. Austin, 147 Neb. 109, 22 N. W. 2d 560.

The evidence here establishes an intent on the part of the testator to cancel and satisfy any and all indebtedness of his two sons without any accounting against their testamentary shares. He carried out that intent by canceling and satisfying such indebtedness in contemplation of death. The fact that the act of inter vivos cancellation created technical changes in the description of the property and consequent ambiguities in application of the language of the will was insufficient to meet the burden of proving a change of testamentary intent.

The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.