IN RE ESTATE OF RICHARD J. MCFAYDEN, DECEASED.
RICHARD E. MCFAYDEN AND MARY S. MCFAYDEN, COPERSONAL
REPRESENTATIVES OF THE ESTATE OF RICHARD J. MCFAYDEN,
DECEASED, APPELLEES AND CROSS-APPELLANTS, V. BETTY JANE
SAMPLE, APPELLANT AND CROSS-APPELLEE.
454 N.W.2d 676

Filed May 4, 1990.    No. 88-351.

James T. Gleason, of Stalnaker, Becker, Buresh & Gleason, P.C., for appellant.

Charles F. Gotch and David A. Blagg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Fahrnbruch, J.

The issue in this appeal is whether a testamentary cash devise to a longtime friend should be reduced by the value of the decedent's inter vivos gifts to that friend.

We hold there should be no reduction in the testamentary cash devise and remand the cause to the district court with instructions.

The operative facts are not in dispute, but only the legal effect of writings by the donor, Richard J. McFayden. For Christmas of 1983, McFayden, a widower, gave a $780.70 fox fur stole to his longtime friend, Betty Jane Sample, a widow. In February 1984, McFayden was diagnosed as having terminal cancer. On the day in February that he was dismissed from the

hospital, McFayden gave Sample a gold cigarette case having an approximate value of $1,500.

On April 3, McFayden executed his last will and testament. In it, he made a $75,000 devise to Sample. After making other specific devises totaling $18,000, McFayden left the remainder of his nearly $3 million estate to his two adult children to share equally. There is nothing in McFayden's will to indicate that any past or future inter vivos gifts to Sample should be considered advancements against her $75,000 devise.

On April 10, a $5,000 check written on the trust account of McFayden's lawyer was deposited in Sample's bank account. On May 16, McFayden gave Sample a $36,859 diamond ring. There was no notation on the check or any contemporaneous written declaration or any writing accompanying the check or the diamond ring at the time of delivery characterizing either gift as an advancement against Sample's bequest. McFayden's gifts to Sample from Christmas of 1983 to and including May 16, 1984, totaled $44,139.70. McFayden's gift of the diamond ring to Sample created substantial friction between Sample and McFayden's two adult children on the day Sample received it.

On May 17, with his lawyer as a witness, McFayden executed a document entitled "Statement of Purpose and Intention." In this instrument, McFayden acknowledged that he had made gifts to Sample because she was a close friend of his and his children's; that the gifts were reasonable and appropriate and were given based on his independent judgment with no undue influence; that any *future gifts* would be made on the same basis; and that the document was made in order to clarify his motives and the circumstances surrounding the gifts. There was no mention of loans in McFayden's statement of purpose and intention.

Thereafter, McFayden issued checks in the following amounts to Sample: $4,500 on May 21, 1984, $16,500 on May 31, and $5,000 on June 12. Sample also received $2,000 in silver dollars from McFayden on May 30. These gifts totaled $28,000. At no time between May 21 and May 31, when each of the gifts was delivered, was there any declaration in writing on the checks or otherwise by McFayden characterizing any of the gifts as advancements against McFayden's $75,000 devise to

Sample.

Almost a month after the gift of silver dollars, McFayden, on June 27, again with his lawyer as a witness, executed a document termed "Cash Distribution Statement." In the opening paragraph, he provided that "[s]ome or all" of the distributions to Sample, both those already made and any made at the time or thereafter, were intended to be present or future gifts in the following fashion: The first $10,000 of these distributions made in any calendar year were to be completed gifts to Sample at the time of distribution. The statement further provided that the distributions in excess of $10,000 were to be interest-free loans, and any amounts forgiven were to be considered completed gifts at the time(s) of forgiveness. Any amounts not repaid by Sample or forgiven during McFayden's lifetime were to be considered forgiven at the time of his death. Importantly for purposes of this case, McFayden declared that "[a]ll of the distributions described here which I may forgive during my lifetime or which may be forgiven at the time of my death as specified here shall be treated as advances to Betty [Sample] of a portion or all of this $75,000 specific bequest contained in my will." Finally, it was McFayden's stated intention that Sample ultimately receive from him and/or his estate (a) the sum of $75,000 or (b) the total amount of these distributions, whichever of (a) or (b) was the larger.

McFayden gave Sample a check for $7,500 on June 30, 1984. In his check register was the notation that the check was for "services rendered." The last check given to Sample by McFayden was in the amount of $4,500 and was dated July 12, 1984. These two gifts totaled $12,000. McFayden died on July 30, 1984, at the age of 58 years. From Christmas of 1983 until his death, McFayden had given gifts to Sample totaling $84,139.70.

In probate proceedings before the Douglas County Court, McFayden's children claimed that Sample's $75,000 devise was satisfied by McFayden during his lifetime through the gifts he made to Sample.

The county court found that none of the gifts to Sample on or before May 17, 1984, constituted advancements under Neb. Rev. Stat. § 30-2350 (Reissue 1989). The county court further

determined that the gifts McFayden gave to Sample on May 21, May 31, June 12, June 30, and July 12, 1984, totaling $38,000, were in partial satisfaction of Sample's devise. No determination was made as to whether the May 30, 1984, gift of silver dollars having a value of $2,000 was in partial satisfaction of the devise. The county court held that Sample was entitled to $37,000 from McFayden's estate. The district court affirmed the decision of the county court. Sample timely appealed to this court, and the McFayden children, as copersonal representatives of McFayden's estate, cross-appealed.

Sample's assignments of error may be summarized as claiming that the district court for Douglas County erred in affirming the county court's finding that the gifts made by McFayden to Sample after May 17, 1984, should apply on satisfaction of the devise to Sample in McFayden's will. In their cross-appeal, the copersonal representatives (McFayden's children) allege that the district court incorrectly determined that none of the distributions made prior to May 17, 1984, and one made on May 30, 1984, were in satisfaction of Sample's devise. The copersonal representatives do not allege that the gifts to Sample were the result of fraud, undue influence, duress, or lack of capacity on the part of McFayden, nor does the record support any such theories.

Before addressing the parties' assignments of error, a brief overview of the law is in order.

The Supreme Court reviews probate cases for error appearing on the record. *In re Estate of Snover*, 233 Neb. 198, 443 N.W.2d 894 (1989); *In re Estate of Miller*, 231 Neb. 723, 437 N.W.2d 793 (1989). Statutory interpretation presents a question of law. See, *Pump & Pantry, Inc. v. City of Grand Island*, 233 Neb. 191, 444 N.W.2d 312 (1989); *State v. Beerbohm*, 229 Neb. 439, 427 N.W.2d 75 (1988).

Regarding a question of law, the Supreme Court has an obligation to reach its conclusion independent of the conclusion reached by the court whose judgment is subject to review. *In re Estate of Peterson*, 230 Neb. 744, 433 N.W.2d 500 (1988).

Between 1866 and January 1, 1977, when Neb. Rev. Stat. § 30-2310 (Reissue 1989) became operative, Nebraska's statutory law provided:

Any estate, real or personal, that may have been given by the intestate in his lifetime, as an advancement *to any child or other lineal descendant*, shall be considered as a part of the estate of the intestate, so far as regards the division and distribution thereof among his issue, and shall be taken by such child or other descendant towards his share of the estate of the intestate.

(Emphasis supplied.) Neb. Rev. Stat. § 30-112 (Reissue 1964).

Until 1939, the doctrine of advancements in Nebraska applied only to intestate estates. See, *In re Estate of Wantz*, 137 Neb. 307, 289 N.W. 363 (1939); *Stanton v. Stanton*, 134 Neb. 660, 279 N.W. 336 (1938). However, in *Wantz, supra*, this court held that the doctrine of advancements was also applicable to wills. The court said that when the testator's intention was clear that sums advanced should be deducted from bequests made, the testator's intention must control.

The *Wantz* court also held that

[a testator's] intention to adeem [satisfy] a legacy may be shown by parol evidence, including that of the testator's conduct subsequent to the execution of the will, and entries made in an account book and other memorandum [sic] properly identified, showing the amount of such payments, are admissible as proof of such satisfaction or ademption. When the evidence shows such an intention on the part of the testator to adeem or satisfy a legacy subsequent to the execution of the will, such intention is controlling, and the burden of disproving such intention is on the party denying it.

*Wantz, supra* at 311, 289 N.W. at 366.

The holding in *Wantz* that parol evidence could be used to prove an advancement overlooked this court's prior holdings. In *Boden v. Mier*, 71 Neb. 191, 98 N.W. 701 (1904), and *Stark v. Stark*, 128 Neb. 524, 259 N.W. 523 (1935), we held that parol evidence was *inadmissible* to prove an advancement. *Austin v. Austin*, 147 Neb. 109, 22 N.W.2d 560 (1946), followed the parol evidence rule in *Wantz, supra*. When Nebraska's version of the Uniform Probate Code became operative on January 1, 1977, the evidentiary rule regarding parol proof of advancements or ademptions espoused in *Wantz, supra*, and *Austin, supra*,

became obsolete. The statute revitalized the rule in *Boden, supra*, and *Stark, supra*, that parol evidence must be excluded in determining whether a gift constitutes an advancement. Section 30-2350 now provides:

Property which a testator gave in his lifetime to a person is treated as a satisfaction of a devise to that person in whole or in part *only if the will provides for deduction of the lifetime gift, or the testator declares in a writing contemporaneous with the gift that it is to be deducted from the devise or is in satisfaction of the devise, or the devisee acknowledges in a writing contemporaneous with the gift that it is in satisfaction.* For purpose of partial satisfaction, property given during lifetime is valued as of the time the devisee came into possession or enjoyment of the property or as of the time of death of the testator, whichever occurs first.

(Emphasis supplied.) See Nebraska comment to § 30-2350. (For source of Nebraska comments, see prologue to the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 to 30-2902 (Reissue 1989).) See § 30-2310 in regard to intestate estates.

"Devise," when used as a noun, means a testamentary disposition of real or personal property. § 30-2209.

From a reading of the statute, it is readily apparent that § 30-2350 no longer permits the use of parol evidence to prove that a testator or testatrix intended an inter vivos gift to be an advancement toward, or ademptive of, a devise in the testator's or testatrix's will. Section 30-2350 limits the proof of an ademptive gift to (1) a recitation in the will that the value of the lifetime gift is to be deducted from the beneficiary's devise; or (2) the testator's *writing contemporaneous with the gift* that its value is to be deducted from the devise or is in satisfaction of the devise; or (3) the devisee's acknowledgment in a writing *contemporaneous with the gift* that it is in whole or in part satisfaction of the devise.

No one has contended that there was a recitation in McFayden's will, nor was there a codicil stating, that his inter vivos gifts to Sample were to be considered as advancements against McFayden's devise to her. The cash distribution statement cannot be considered as a testamentary disposition or

a codicil to McFayden's last will and testament because it was not executed as required by §§ 30-2327 or 30-2328. Neither is there any contention that Sample did, in writing, contemporaneous with receiving any of McFayden's gifts, acknowledge that any gift was in whole or in part in satisfaction of the devise to her in McFayden's will. Nothing in his statement of purpose and intention even remotely suggests that any gifts McFayden made to Sample before May 17, 1984, or the gifts he intended to make in the future would be in partial or full satisfaction of the bequest to Sample in McFayden's will.

We first determine whether the distributions made prior to the execution of the cash distribution statement constituted advances on Sample's devise. When a person has donated property as a gift inter vivos, he or she cannot subsequently, by acts indicating a subsequent change of intention, affect the gift thus completed. *In re Estate of Saathoff. Saathoff v. Saathoff*, 206 Neb. 793, 295 N.W.2d 290 (1980). See, also, *Elliott v. Western Coal Co.*, 243 Ill. 614, 90 N.E. 1104 (1910) (holding that an absolute gift cannot thereafter be changed into an advance of an heir's share of an intestate estate). " ' "To make a valid and effective gift inter vivos, there must be an intention to transfer title to the property, and a delivery by the donor and acceptance by the donee." . . .' " *Guardian State Bank & Trust Co. v. Jacobson*, 220 Neb. 235, 239, 369 N.W.2d 80, 83 (1985) (quoting *Saathoff, supra*). It would appear under *Elliott, supra*, that after a gift has been delivered, the only way for a donor to set it off against a devise would be by a codicil or by another document testamentary in nature. The record is uncontradicted that at the times the distributions were made prior to June 27, 1984, there was donative intent, delivery, and acceptance of the gifts. Because the effect of a gift inter vivos cannot be changed by a subsequent act, as held in *Saathoff, supra*, the distributions made prior to June 27, 1984, were not in satisfaction of Sample's devise.

The remaining issue is whether all or a portion of the distributions made by McFayden to Sample after June 27 adeemed by satisfaction part of Sample's devise. McFayden gave Sample a $7,500 check on June 30 and a $4,500 check on July 12.

Since in the cash distribution statement McFayden characterized some of the distributions to Sample as loans, it must first be determined whether the checks subsequent to June 27 were loans or gifts. " ' "A loan of money is the delivery by one party and the receipt by the other party of a given sum of money, *upon an agreement*, express or implied, to repay the sum loaned, with or without interest." . . .' " (Emphasis supplied.) *Cartney v. Olson*, 154 Neb. 546, 549, 48 N.W.2d 653, 655 (1951). There is a recitation in his cash distribution statement that McFayden loaned money to Sample. However, there is no evidence that Sample ever agreed to repay any of the monetary distributions or other personal property she received from McFayden. In his May 17, 1984, statement of purpose and intention, McFayden characterized not only past but also future distributions to Sample as gifts. The parties, in their stipulation filed in county court, refer to the distributions of cash and noncash property as being "gifts."

Since parol evidence is inadmissible to determine whether a gift is an advancement, and since there is nothing in McFayden's will concerning advancements, we must look only to the documents the decedent executed on May 17 and June 27, 1984, the checks issued on June 30 and July 12, and a check register involving the two checks in our determination of whether those checks were advancements against the devise to Sample.

A donor may express *in* the gift that the gift is an advancement. It is noted that McFayden made no notation to that effect on the $7,500 check of June 30 nor on the $4,500 check of July 12, although there was a line on each check which could have been utilized to place the words "advancement on payee's devise." The check register contains notations, presumably made at the time the checks were written, evidencing the purposes of a number of the checks. There is no notation in the register reflecting that either the June 30 or July 12 check to Sample was an advancement on her devise. To the contrary, the check register, for whatever reason not explained in the evidence, carries the notation that the $7,500 June 30 check was for services rendered. That check register notation negates any contention that the June 30 check was an

advancement against Sample's devise. Clearly, the evidence is insufficient as a matter of law to prove that McFayden intended the June 30 check to be an advancement on Sample's devise.

We also conclude that the gift of $4,500 on July 12 was not an advancement on Sample's devise. Clearly, the purpose behind the contemporaneous writing requirement is to disallow parol evidence. In this case, the $4,500 check was given more than 2 weeks after the execution of the cash distribution statement. There is nothing in writing to show the testator's intent at the time the July 12 check was delivered. Thus, parol evidence would be necessary to determine McFayden's state of mind on July 12. This is the very evidence the Legislature sought to eliminate. Based on the admissible competent evidence presented in this case, it is concluded that the McFayden children have failed to carry by competent and relevant evidence their burden of proof as the parties claiming that the July 12 check was an advancement. See *Travis v. Travis*, 189 Neb. 242, 202 N.W.2d 185 (1972).

The result we reach in regard to all the gifts McFayden made to Sample is also dictated by McFayden's failure to declare *in writing contemporaneous with each gift* that it was to be deducted from Sample's devise, as required by § 30-2350. By providing that in addition to a clause in the testator's will or, contemporaneous with a gift, a written acknowledgement by the devisee, the only admissible proof of an advancement is the testator's declaration in writing contemporaneous with the gift, § 30-2350 eliminates as proof a written blanket declaration that future inter vivos gifts to a devisee are to be considered advancements. Such an interpretation prevents confusion as to whether a future birthday or Christmas gift or the cashing of a check for a testator by a devisee constitutes an advancement on a devise. It also eliminates parol evidence in regard to advancements, which is the very essence of § 30-2350.

We have reviewed the cross-appeal of the appellees, in which they claim the trial court erred in determining that (1) none of the gifts prior to May 17, 1984, adeem or satisfy the devise to Sample and (2) certain distributions occurring after May 17, 1984, were not in satisfaction of the devise to Sample. In view of our holdings in this opinion, we find appellees' assignments of

error are without merit.

The factual findings of the Douglas County Court were clearly wrong as a matter of law, and the district court's judgment is similarly clearly wrong.

None of the gifts McFayden made to Sample during his lifetime shall be used to reduce the $75,000 devise to Sample in McFayden's will.

This cause is remanded to the district court for Douglas County with instructions to remand the case to the Douglas County Court with instructions to enter judgment in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.