STATE OF NEBRASKA ON BEHALF OF KEITH I. HOPKINS, JR.,
A MINOR CHILD, APPELLEE, V. CHYRLYN K. BATT, APPELLEE,
AND RICHARD A. FILBERT II, APPELLANT.

573 N.W. 2d 425

Filed January 30, 1998.    No. S-96-290.

Gregory Plank, of Hascall, Jungers, Garvey & Delaney, for appellant.

John W. Reisz, Deputy Sarpy County Attorney, for appellee State.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

In this filiation proceeding initiated by the State of Nebraska, the district court for Sarpy County determined that Richard Filbert II was the biological father of Keith I. Hopkins, Jr. (Keith), a minor child, and ordered Filbert to pay child support. On appeal, Filbert contends that the district court erred in refusing to recognize several defenses which he asserted and in calculating Filbert's support obligation. We find no error and, therefore, affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Chyrlyn K. Batt and Keith I. Hopkins (Hopkins) were married on August 4, 1985. Batt gave birth to four children during the marriage, the youngest of whom was Keith, born April 18, 1992. The marriage was dissolved by the district court for Sarpy County on October 8, 1993. Batt was awarded custody of the four children, and Hopkins was ordered to pay a total of $1,214 per month in child support. On May 3, 1995, the decree of dissolution was modified because the two older children chose to live with Hopkins. The two younger children, including Keith, remained in Batt's custody. In the order for modification,

Hopkins' child support obligation was decreased to $400 per month, with a provision for reduction to $250 per month if Batt had custody of only one child.

On April 19, 1995, the State of Nebraska filed a petition in the district court for Sarpy County on behalf of Keith, requesting a determination that Filbert is Keith's biological father and obligated to provide child support. Batt and Filbert were named as defendants in this action; Hopkins is not a party. In his answer, Filbert denied paternity and asserted defenses of collateral estoppel, equitable estoppel, res judicata, laches, and mootness.

At trial on February 13, 1996, Batt testified that while separated from Hopkins prior to the dissolution of their marriage, she had sexual relations with Filbert on July 27, 1991, resulting in the conception of Keith. She denied having any other sexual partners within 2 months of the probable conception date. Batt testified that she telephoned Filbert regarding the pregnancy, but she could not remember exactly what was said during the conversation.

Filbert testified that at the time of trial he was on active duty in the Air Force, stationed in California. He was married and lived in base housing with his wife, his stepson, and his son from a previous marriage. His gross monthly income was $1,828, and his net take-home pay was approximately $1,511. A portion of this amount, designated as "BAS," is a subsistence allowance which is not subject to federal income tax. Filbert testified that he did not remember having sexual relations with Batt, but he believed that he was Keith's biological father.

The State presented evidence of genetic testing performed to determine whether Filbert was Keith's biological father. The test results established a 99.98-percent probability of paternity as compared to an untested, unrelated man of the North American Caucasian population. The record contains no evidence of any testing to determine whether Hopkins could be Keith's biological father.

The district court found that Filbert was Keith's biological father and awarded custody to Batt subject to reasonable visitation. Filbert was ordered to pay child support for Keith in the amount of $307 per month commencing on March 1, 1996. In determining this amount, the court considered Filbert's taxable

income, as well as his nontaxable BAS and the value of his military housing. The district court also ordered Filbert to insure Keith under his health plan and pay all medical, dental, orthodontic, and optical expenses not covered by insurance or his military benefits. In addition, Filbert was ordered to pay half of any day-care expenses incurred while Batt worked, the costs of the action, and $270 in genetic testing expenses.

Filbert appealed from the decision of the district court. Pursuant to our authority to regulate the dockets of the Nebraska Court of Appeals and this court, we removed this case to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Restated, Filbert assigns as error the district court's rejection of his alternative theories of defense to the allegations of paternity, which included (1) res judicata arising from the decree dissolving the marriage of Batt and Hopkins, (2) equitable estoppel arising from false representations by Batt and Hopkins in the dissolution proceeding, (3) the presumption of legitimacy, (4) the doctrine of in loco parentis, and (5) an alleged acknowledgment of paternity by Hopkins. In addition, Filbert alleges error in the manner in which the district court calculated his child support obligation.

## III. SCOPE OF REVIEW

In a filiation proceeding, the appellate court reviews the trial court's judgment de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. *Lancaster v. Brenneis*, 227 Neb. 371, 417 N.W.2d 767 (1988). In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Lancaster, supra.*

A trial court's award of child support in a paternity case will not be disturbed on appeal in the absence of an abuse of discretion. *State on behalf of Joseph F. v. Rial*, 251 Neb. 1, 554 N.W.2d 769 (1996); *Sylvis v. Walling*, 248 Neb. 168, 532

N.W.2d 312 (1995); *State on behalf of S.M. v. Oglesby*, 244 Neb. 880, 510 N.W.2d 53 (1994). On questions of law, however, the appellate court has an independent obligation to reach the correct conclusion. *Shiers v. Shiers*, 240 Neb. 856, 485 N.W.2d 574 (1992).

## IV. ANALYSIS

Before addressing Filbert's assignments of error, we find it necessary to examine the nature of this proceeding and determine whether the State has standing to bring this action. Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996). Because the requirement of standing is fundamental to a court's exercise of jurisdiction, a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding. *Id.*

The State alleges in its petition that it is authorized to seek relief pursuant to Neb. Rev. Stat. §§ 42-358 (Cum. Supp. 1994), 43-512 et seq. (Reissue 1993 & Cum. Supp. 1994), and 43-1401 et seq. (Reissue 1993 & Cum. Supp. 1994). We find no basis for standing under § 42-358, which deals with the appointment of attorneys for minor children in dissolution actions. While § 43-512.03(c) authorizes a county attorney acting on behalf of the State to initiate a civil action to establish paternity and collect child support on behalf of children born out of wedlock, it must be interpreted in conformity with the entire statutory scheme codified in Neb. Rev. Stat. §§ 43-501 to 43-526 (Reissue 1993 & Cum. Supp. 1994), which constitutes "new, supplemental, and independent legislation upon the subjects of assistance and services for delinquent, dependent, and medically handicapped children . . . ." § 43-501. These statutes define a "dependent child" as one who receives or is entitled to receive public assistance. § 43-504(1). The remedy specified in § 43-512.03 is a means by which the State, as the real party in interest, may recover amounts which it has paid or is obligated to pay on behalf of a dependent child. §§ 43-512 and 43-512.03(4); *State on behalf of Garcia v. Garcia*, 238 Neb.

455, 471 N.W.2d 388 (1991). There is no allegation in this case that Keith has received or is eligible to receive public assistance benefits, and the remedy provided by § 43-512.03 is therefore inapplicable.

However, the State also invokes § 43-1411, which provides in part:

> A civil proceeding to establish the paternity of a child may be instituted, in any district court of the district where the child is domiciled or found or, for cases under the Uniform Interstate Family Support Act if the child is not domiciled or found in Nebraska, where the mother or alleged father is domiciled, by (1) the mother or the alleged father of such child . . . or (2) the guardian or next friend of such child *or the state,* either during pregnancy or within eighteen years after the child's birth.

(Emphasis supplied.) Where paternity is established in an action commenced under this section, the court shall retain jurisdiction and order the father to pay support, court costs, and reasonable attorney fees. § 43-1412(3). We have construed § 43-1411 as a means by which the State, in its parens patriae role, may bring a paternity action on behalf of a minor child for future support. *State on behalf of B.A.T. v. S.K.D.,* 246 Neb. 616, 522 N.W.2d 393 (1994); *Oglesby, supra.* In contrast to § 43-512.03, the State's right to sue under this section is not conditioned upon the payment of public assistance benefits for the minor child.

Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in Neb. Rev. Stat. § 25-304 (Reissue 1995). *Misle v. Misle,* 247 Neb. 592, 529 N.W.2d 54 (1995); Neb. Rev. Stat. § 25-301 (Reissue 1995). Parties acting in a representative capacity, including executors, administrators, trustees, "or a person expressly authorized by statute" may bring an action without joining the person for whose benefit it is prosecuted. § 25-304. It is clear from the petition that the State brings this action on behalf of Keith and not on its own behalf. A child born out of wedlock has a statutory right to receive support from its father, § 43-1402, and a cause of action to enforce a parental duty to provide support belongs to the child, *Sylvis v. Walling,* 248 Neb. 168, 532

N.W.2d 312 (1995). Thus, Keith is the real party in interest, and the State is authorized by statute to bring this action on his behalf.

Having determined these preliminary issues, we address Filbert's assignments of error.

## 1. PRIOR ADJUDICATION OF PATERNITY

Filbert claims that because Hopkins' paternity was adjudicated in the dissolution action, the State's claim that he is Keith's biological father is barred by the doctrine of res judicata. Res judicata bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994). As Filbert conceded in his brief, the fourth essential element of res judicata is not present in this case because he was not a party to the dissolution proceeding. Therefore, the decree in that proceeding does not bar the claim asserted against him in this case.

## 2. EQUITABLE ESTOPPEL

Next, Filbert contends that the paternity claim is barred by the principle of equitable estoppel. In general, equitable estoppel is a bar which "precludes a party from denying or asserting anything to the contrary of those matters established as the truth by his own deeds, acts, or representations." (Emphasis omitted.) *State on behalf of J.R. v. Mendoza*, 240 Neb. 149, 165, 481 N.W.2d 165, 175 (1992). See, also, *Jennings v. Dunning*, 232 Neb. 366, 440 N.W.2d 671 (1989). The elements of equitable estoppel are, as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts; and as to the

other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice. *Mendoza, supra.*

In essence, Filbert contends that the conduct of Batt and Hopkins in naming Keith after Hopkins and representing in the dissolution proceeding that Hopkins was Keith's father estops them from denying Hopkins' paternity. Thus, Filbert argues, Hopkins' paternity by estoppel is established even if he is not Keith's biological father. In *Mendoza, supra*, we rejected a similar claim based upon the fact that the person whose actions were alleged to create paternity by estoppel was not a party to the action against the alleged biological father. We stated: "As the doctrine of estoppel acts to preclude a *party* to the suit from taking a position contrary to that taken previously, it is inapplicable in this case." *Id.* at 165, 481 N.W.2d at 175. In this case, Filbert asserts that the conduct of Hopkins and Batt should preclude them from denying Hopkins' paternity. However, Hopkins is not a party to this action and therefore cannot be estopped. In addition, while Batt is a party defendant, she has asserted no claim and consequently cannot be estopped. The claim in this case belongs to Keith, and it cannot be defeated by operation of equitable estoppel arising from any conduct of Hopkins and Batt.

### 3. PRESUMPTION OF LEGITIMACY, IN LOCO PARENTIS, AND ACKNOWLEDGMENT

Filbert also argues that the district court erred in refusing to apply the presumption of legitimacy and the doctrines of in loco parentis and acknowledgment to find that Hopkins was Keith's father, thereby eliminating the possibility of Filbert's paternity. Each of these legal tenets is a method by which a nonbiological parent may be proclaimed a legal parent without the necessity of adoption. Filbert claims that it is legally impossible for Keith to have two fathers and, therefore, that Filbert cannot be Keith's father.

## (a) Presumption of Legitimacy

The presumption of legitimacy is a common-law doctrine which has to some extent been preserved in Nebraska's statutes dealing with the dissolution of marriage. Neb. Rev. Stat. § 42-377 (Reissue 1993) provides:

> Children born to the parties, or to the wife, in a marriage relationship which may be dissolved or annulled pursuant to sections 42-347 to 42-379, shall be legitimate unless otherwise decreed by the court, and in every case the legitimacy of all children conceived before the commencement of the suit shall be presumed until the contrary is shown.

This statutory presumption may be rebutted by clear, satisfactory, and convincing evidence. In a paternity action, the mother and the alleged father are competent to testify that a child's parentage is contrary to the presumption of legitimacy. § 43-1412(1); *Roebuck v. Fraedrich*, 201 Neb. 413, 267 N.W.2d 759 (1978).

The presumption of legitimacy was rebutted in this case. Batt testified that she did not have sexual relations with anyone other than Filbert during the time period in which Keith was conceived and that Filbert was Keith's father. Filbert did not deny this and in fact testified as to his belief that he was Keith's father. In addition, the record contains results of genetic testing indicating a 99.98-percent probability that Filbert is Keith's father. This constitutes clear, satisfactory, and convincing evidence which is sufficient to overcome the statutory presumption that Keith is Hopkins' child.

## (b) In Loco Parentis

In the absence of a biological relationship between a husband and his wife's child, the husband may acquire certain rights and responsibilities when he elects to stand in loco parentis to the child. See, *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991); *Austin v. Austin*, 147 Neb. 109, 22 N.W.2d 560 (1946). We have stated:

> " 'A person standing in loco parentis to a child is one who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation,

without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. The assumption of the relation is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relation.'. . ."

*Hickenbottom*, 239 Neb. at 592, 477 N.W.2d at 17 (quoting *Austin, supra*).

This doctrine does not shield Filbert from a determination of paternity. Even if we assume that at some time in the past Hopkins intended to stand in loco parentis to Keith by naming the child after him and paying child support pursuant to the dissolution decree, there is no evidence that such a relationship existed at the time of trial. There was uncontroverted evidence that Batt returned Hopkins' child support payments for Keith because she and Hopkins agreed that he was not Keith's father. Keith has lived with Batt, not Hopkins, since the dissolution of Batt and Hopkins' marriage in 1993. Whatever his previous intentions, there is no evidence that Hopkins intended to stand in loco parentis in relation to Keith at any time relevant to this action.

(c) Acknowledgment

Whether there has been a legally cognizable acknowledgment of paternity is determined by statute. At the time of Keith's birth in 1992, § 43-1409 (Reissue 1988) provided in part:

A person may state in writing that he is the father of a child or perform acts, such as furnishing of support, which reasonably indicate that he considers himself to be the father of such child, and in such case he shall be considered to have acknowledged the paternity of such child.

This statute was amended, with an operative date of July 1, 1994, and provides: "The signing of a notarized acknowledgment . . . by the alleged father shall create a rebuttable presumption of paternity as against the alleged father. Such a signed and notarized acknowledgment or a certified copy or certified reproduction thereof shall be admissible in evidence in any proceeding to establish support." § 43-1409 (Cum. Supp. 1996).

The record in this case contains no document signed by Hopkins acknowledging paternity, either in the form currently prescribed by § 43-1409 or otherwise. However, Filbert contends that Hopkins' acquiescence in the naming of the child and his payment of child support establish that he considered himself to be Keith's father and, therefore, constitute an acknowledgment of paternity under the language of § 43-1409 prior to the 1994 amendment.

We addressed a similar issue in *State on behalf of J.R. v. Mendoza*, 240 Neb. 149, 481 N.W.2d 165 (1992), a paternity action in which it was alleged that Mendoza was the father of a child born prior to the mother's marriage to a man named Castillo. The mother and Castillo testified that Castillo was not the natural father of the child, and blood tests corroborated this testimony. However, there was evidence that Castillo executed a sworn document acknowledging that he was the biological father of the child in order to obtain a new birth certificate showing the child's surname as "Castillo." In addition, there was evidence that Castillo supported the child, who lived in his household, and that the child regarded Castillo as his father. Mendoza contended that Castillo's actions constituted an acknowledgment of paternity under the language of § 43-1409 prior to the 1994 amendment, which conclusively established Castillo and excluded Mendoza as the father of the child. In rejecting this argument, we cited with approval the decision by the Louisiana Supreme Court in *Smith v. Cole*, 553 So. 2d 847 (La. 1989), which recognized a " 'dual paternity' " scheme in which the mother of a child born out of wedlock may bring a filiation proceeding for support against a putative father despite the existence of another " 'legal father.' " *Mendoza*, 240 Neb. at 158, 481 N.W.2d at 171. We quoted the following passage from *Smith*:

> "The presumption [of legitimacy] was intended to protect innocent children from the stigma attached to illegitimacy and to prevent case-by-case determinations of paternity. It was not intended to shield biological fathers from their support obligations. . . . The presumed father's acceptance of paternal responsibilities, either by intent or default, does not enure to the benefit of the biological father. It is

the fact of biological paternity or maternity which obliges parents to nourish their children."

*Mendoza*, 240 Neb. at 158, 481 N.W.2d at 172. We wrote further:

> [T]he legal status of children born out of wedlock is much more favorable today than in the past. Thus, the necessity of indulging in legal fictions in order to steadfastly protect their legal status is somewhat lessened. . . . This trend in the law, combined with the inequity of granting biological fathers of children born out of wedlock extensive rights without imposing on them corresponding responsibilities, indicates that concerns regarding the stigma of illegitimacy should not outweigh the primary purposes of the filiation statutes: identifying the biological fathers of children born out of wedlock and imposing on them an obligation of support.

(Citation omitted.) 240 Neb. at 159, 481 N.W.2d at 172.

The facts that Keith bears Hopkins' name and that Hopkins paid child support pursuant to the dissolution decree do not compel a finding that Hopkins, and not Filbert, is Keith's father. Even assuming that Hopkins' actions would constitute an acknowledgment of paternity under the pre-1994 version of § 43-1409, this would not defeat the claim against Filbert. Under *Mendoza*, an acknowledgment of paternity by another person is not conclusive in an action to establish paternity in the biological father. We find no error by the district court in rejecting Filbert's defense based upon an alleged acknowledgment of paternity by Hopkins.

### 4. CALCULATION OF CHILD SUPPORT

Filbert argues that even if paternity is established, the district court erred in determining the amount of child support for which he was responsible in that (1) it included the value of Filbert's military housing and subsistence allowance in its calculation and (2) it failed to consider child support payments by Hopkins pursuant to the dissolution decree as modified. We address these contentions separately to determine whether the district court abused its discretion in awarding child support.

Child support in a paternity action is to be determined in the same manner as in cases of children born in lawful wedlock. § 43-1402; *State on behalf of S.M. v. Oglesby*, 244 Neb. 880, 510 N.W.2d 53 (1994). In determining the amount of child support to be paid by a parent, the court must consider the earning capacity of each parent and apply the Nebraska Child Support Guidelines adopted by this court. Neb. Rev. Stat. § 42-364(6) (Cum. Supp. 1994). The guidelines are applied as a rebuttable presumption, and all orders for child support shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. Nebraska Child Support Guidelines, paragraph C; Neb. Rev. Stat. § 42-364.16 (Cum. Supp. 1996); *Oglesby, supra.*

Filbert argues that the value of his military housing and BAS should have been excluded from the district court's child support calculations because they do not constitute taxable income pursuant to the Internal Revenue Code. See I.R.C. § 134. He contends that the Nebraska Child Support Guidelines permit the court to consider only the taxable income of the parents. However, paragraph D of the Guidelines states that total monthly income includes the "income of both parties derived from all sources, except all means-tested public assistance benefits and payments received for children of prior marriages." Although the guidelines require parties to submit at least 2 years' tax returns, they clearly contemplate that a court will consider factors other than taxable income in making child support calculations. For example, the guidelines require a self-employed person to add back into his or her income any depreciation claimed on tax returns. *Id.* In addition, the guidelines permit a court to consider a person's earning capacity rather than simply his or her actual earnings. *Id.* See *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996). Also, the guidelines permit divergence from the guidelines themselves if application of the guidelines would result in an unjust or inappropriate figure. Paragraph C(5). Thus, the guidelines contemplate that income for purposes of child support may differ from

taxable income and do not prevent consideration of tax-exempt benefits in determining the amount of a parent's income "derived from all sources." The district court did not err by including the nontaxable value of Filbert's military housing and BAS in calculating his child support obligation.

Under the decree of dissolution as modified on May 3, 1995, Hopkins is to pay $400 per month child support for the two children in Batt's custody, including Keith. Filbert contends that the district court erred in failing to consider Hopkins' court-ordered child support payments for Keith in calculating Filbert's support obligation. This contention is without merit for two reasons. First, there is uncontroverted evidence that Batt has returned to Hopkins that portion of his child support payments attributable to Keith. Second, under *State on behalf of J.R. v. Mendoza*, 240 Neb. 149, 481 N.W.2d 165 (1992), a child's biological parent has the primary obligation of support. Thus, regardless of any support payments Hopkins may have made, Filbert is responsible for providing full support for Keith. The district court therefore did not abuse its discretion in not considering any obligation which Hopkins may have had under the dissolution decree in calculating Filbert's child support payments. By so holding, we express no opinion regarding the nature of Hopkins' future child support obligation under the dissolution decree, since that issue is not before us and Hopkins is not a party to this action.

In conclusion, we find each of Filbert's assignments of error to be without merit and therefore affirm the judgment of the district court for Sarpy County.

AFFIRMED.