Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/16/2023 09:07 AM CDT

- 907 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

In re Adoption of Antaeus A., a minor child.
William M. and Elizabeth M., appellees,
v. Andrew A., appellant, and
Rachel D., appellee.

___ N.W.2d ___

Filed May 16, 2023.    No. A-22-594.

1.  **Adoption: Appeal and Error.** Appeals in adoption proceedings are reviewed by an appellate court for error appearing on the record.
2.  **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3.  **Abandonment: Evidence: Proof.** In order for a court to find that abandonment has occurred, the petitioning party bears the burden of proving by clear and convincing evidence that the parent abandoned the child.
4.  **Abandonment: Proof.** To constitute abandonment, it must appear that there has been, by the parents, a giving up or total desertion of the minor child. There must be shown an absolute relinquishment of the custody and control of the minor and thus the laying aside by the parents of all care for the minor.
5.  **Adoption.** Adoption statutes will be strictly construed in favor of the rights of the natural parents in controversies involving termination of the relation of the parent and child.
6.  **Abandonment: Evidence: Appeal and Error.** The various definitions of abandonment do not require an appellate court to review the statutory period in a vacuum. One may consider the evidence of a parent's conduct, either before or after the statutory period, because this evidence is relevant to a determination of whether the purpose and intent of that parent was to abandon his or her child or children.
7.  **Abandonment: Intent: Evidence.** Evidence of a parent's conduct is relevant to a determination of whether the purpose and intent of that parent was to abandon the child.

- 908 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

Appeal from the County Court for Madison County: Michael L. Long, Judge. Affirmed.

Kory L. Quandt and Ryan M. Hoffman, of Bressman, Hoffman & Jacobs, P.C., L.L.O., for appellant.

Susan K. Sapp and Nathan D. Clark, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees William M. and Elizabeth M.

Riedmann, Bishop, and Arterburn, Judges.

Riedmann, Judge.

## INTRODUCTION

This is Andrew A.'s appeal from the order of the county court for Madison County finding that his consent, as the biological father, to the adoption of Antaeus A. was not needed. Andrew assigns that the county court erred in finding that the adoptive parents proved by clear and convincing evidence that he abandoned the minor child in the 6-month period preceding the filing of the adoption petition. Following our review for error appearing on the record, we affirm.

## BACKGROUND

On December 10, 2021, the district court for Madison County issued an order for consent to adoption of Antaeus upon the motion of his biological mother, Rachel D. On January 19, 2022, William M. and Elizabeth M. filed a petition for adoption of Antaeus in the county court for Madison County; the petition alleged that Andrew and Rachel had abandoned Antaeus. The county court granted William and Elizabeth's motion to bifurcate and scheduled a trial on the issue of abandonment by Andrew.

Relevant to this appeal, the evidence showed that Andrew and Rachel met at a homeless shelter in Colorado Springs, Colorado. Approximately a week later, Rachel became pregnant. While pregnant with Antaeus, Rachel resided with Andrew in an apartment in Colorado Springs, though she left

- 909 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

the apartment at various times, including twice because of domestic violence and twice because Andrew "kicked [her] out" of the apartment. On one occasion, she was unable to find shelter and slept outside.

Rachel, working with various resources in Colorado Springs, was able to obtain items for use when Antaeus was born, such as a crib and changing table, a breast pump, and diapers. A month before her due date, Andrew quit his job and decided the two would move to Blair, Nebraska, to live with his mother. Rachel was under the impression that they were going to sell the baby items to raise funds for the move; instead, Andrew used the money to purchase marijuana. Rachel described Andrew as very controlling and verbally combative and agreed that the environment in which she lived was volatile.

Antaeus was born in July 2016 in Colorado Springs. He was kept in the hospital an extra day because staff discovered that Rachel did not have a crib. Shortly after Antaeus' birth, the three moved to Nebraska; Rachel described the first 4 weeks of living with Andrew and his mother, stating that Andrew would argue with his mother, call her names, and get "pretty angry" with her, and that once, he spit on his mother and threatened to beat her up.

On August 24, 2016, Andrew became suspicious after Rachel went to the bathroom, because he was convinced that Rachel "had done something in the bathroom other than peeing," and a confrontation between the two occurred. When Andrew's mother intervened, Andrew screamed at his mother and Rachel heard his mother scream and what sounded like his mother's being punched several times.

As a result of this incident, Andrew was arrested and jailed "for a long period of time." Sometime in the fall of 2016, Rachel worked with a domestic violence shelter in Norfolk, Nebraska, that arranged for her and Antaeus to be transported from Blair to the shelter in Norfolk. After a couple of months in the emergency shelter, Rachel moved to the program's

- 910 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

transitional house. During this time, Andrew was in jail; Rachel used money from a joint account she had with Andrew for financial support. Eventually, Rachel obtained a job and replaced the money that had been in the checking account.

In February 2017, Rachel filed a petition in the Madison County District Court to establish custody of Antaeus. In May, a decree established paternity of Antaeus and awarded Rachel sole physical and legal custody. Andrew was not awarded any parenting time, nor was he ordered to pay child support. Also in May, Rachel obtained a temporary domestic abuse protection order against Andrew, which did not prohibit contact between Antaeus and Andrew. The order was affirmed in June and was in place until May 2019.

Andrew did not have contact with Antaeus from the time of Andrew's arrest in August 2016 until sometime in 2018. During 2017, Rachel employed William and Elizabeth as supplemental daycare providers for Antaeus so she could work a second job. Eventually, they provided full-time daycare for Antaeus.

In December 2017, Andrew, represented by counsel, filed a complaint to modify the decree of paternity. In February 2018, Andrew filed a motion for a temporary order requesting visitation with Antaeus and establishing child support payments. The court denied parenting time until Andrew established a plan for supervised visitation at a local mental health facility. The district court found that was necessary based on Andrew's prior violation of the protection order, his criminal history, and the manner in which he testified, which led the court to conclude that he was "not sufficiently in control of his emotional behavior such that he would be able to properly parent a child." It did not order Andrew to pay child support.

Pursuant to the temporary order, Andrew arranged for supervised visits, but due to his aggressive behavior toward the supervising facilities' staff, he had only four 2-hour visits throughout 2018. He did not provide any voluntary financial support for Antaeus; however, he did offer some gifts

- 911 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

through his attorney at a court hearing, but Rachel declined his offer because the protection order was still in place.

On May 23, 2019, the district court entered an order on Andrew's complaint to modify. It acknowledged Andrew's aggressive behaviors during the four supervised visits, his extensive criminal history, and his inability to exercise parental judgment in an unsupervised setting. The court granted Andrew limited supervised visitation for 2 hours on the first Saturday of each month. The district court did not order child support, because it was not convinced that Andrew had the ability to support himself or hold an employed position for any length of time due to his "unusual behaviors" shown in court.

Despite the court's order, Andrew did not exercise any visitation in 2019. He filed an unverified affidavit and application for an order to show cause on June 7, in which he alleged that Rachel was being noncompliant with the visitation order. Contrary to the order, he asserted that the judge did not limit the number of visits he was entitled to. No hearing was ever held on the application.

At some point in late 2019, Rachel left Norfolk and moved to Omaha, Nebraska, for about 6 months before eventually moving to Hastings, Nebraska, to attend a treatment center. After the treatment program, Rachel went to a homeless shelter. Rachel had trouble transitioning back into the community, and she decided it was not fair to put Antaeus in that situation. She did not feel Andrew was a viable option. Although Rachel had not spoken to William and Elizabeth in a long time, she contacted them to see if they would "take" Antaeus. They agreed and picked up Antaeus from Hastings on August 16, 2020; he has been in their care since that date.

In July 2020, Andrew, represented by new counsel, filed a complaint for modification. He asserted that a material change in circumstances existed because he was now leading a sober and law-abiding life; therefore, he requested that he be awarded reasonable unsupervised parenting time.

- 912 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

Thereafter, Andrew had two supervised visits with Antaeus, which were his only visits in 2020. Andrew's counsel withdrew in late 2020, and there were no additional requests for visitation. The modification complaint was dismissed for lack of prosecution in December. Rachel admitted that she had failed to keep her address updated with the court for some period of time; however, by the time Andrew's counsel withdrew, she had an address on file where she could be contacted.

William testified that he and Elizabeth have had placement of Antaeus since August 16, 2020. From that date to the filing of the adoption petition on January 19, 2022, William did not receive any request for visitation or any financial support from Andrew. After the filing of the adoption petition, Andrew contacted William one time to let him know he had been released from incarceration and "was looking to find how he fought this process."

The guardian ad litem (GAL) testified that in the course of his investigation, he had two phone conversations with Andrew in February 2022. The GAL confirmed that in the 6 months prior to the filing of the adoption petition, Andrew did not provide any financial support for Antaeus. The GAL expressed concern with the possessive tone in which Andrew spoke of Antaeus and with Andrew's criminal history. He related that Andrew had been arrested between 30 and 40 times and that beginning in 2019, there were a series of assaults for which he served a lengthy jail sentence. Most recently, Andrew served a sentence for obstruction of a police officer, disturbing the peace, and resisting arrest in the second half of 2021.

The GAL confirmed that the 6-month period at issue was from July 2021 to January 23, 2022. During that time period, Andrew authored several letters to both the district court and county court judges in Madison County. In those letters, Andrew expressed a willingness to pay child support; however, the GAL noted that at the time the letters were filed, notification had already been given of the intent to adopt. Based

- 913 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

upon his investigation, the GAL concluded that Andrew had abandoned Antaeus and that it was in the child's best interests for the court to authorize the GAL to give substituted consents for adoption.

Andrew testified at the hearing. He explained that he filed a complaint to modify the paternity decree in December 2017 so he could have parenting time and pay child support, because he wanted to be an integral part of Antaeus' life. In June 2019, Andrew filed an application for an order to show cause because Rachel failed to bring Antaeus to two supervised visits. No trial was ever held on the application. Thereafter, Andrew sent letters to the district court judge in an attempt to get parenting time. At the time, Andrew was incarcerated and had a pending criminal case before the district court judge to whom he sent the letters. He admitted on cross-examination that the letters were for purposes of not only his domestic case, but also his criminal case on which he was awaiting sentence.

Andrew explained that in November 2021, while he was incarcerated, he wrote a letter to the district court judge because he wanted to regain custody of Antaeus, receive more visits, and pay child support. Although Andrew testified that he did not know the whereabouts of his son, he never asked Rachel where he was, nor did he hire an attorney to help him. As to the letters he wrote to the court throughout December and into January 2022, Andrew admitted on cross-examination that at the time he wrote the letters, he had already received notice of the filing of the motion relating to consent to proceed with the adoption.

Andrew confirmed that in the 5 years since Antaeus was born, he had had a total of six supervised visits, but emphasized that he had written numerous letters to the court to demonstrate his intent to be with Antaeus. Andrew testified that he had written letters to Rachel and sent them to a mission and a shelter in Norfolk and that although the shelter

- 914 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

initially stated copies of the letters could be provided, they later recanted that.

Rachel did not receive support from Andrew from 2017 through 2020. Aside from the money from the checking account that she used, which money she replaced, there was never any money or support ever given. William also never received any support from Andrew after Antaeus was placed in his and Elizabeth's care.

The county court issued an order in which it found that Andrew had abandoned Antaeus in the 6 months or more prior to the filing of the petition for adoption. A decree of adoption was issued in July 2022. Andrew appealed.

## ASSIGNMENT OF ERROR

Andrew assigns that the county court erred in finding that the adoptive parents proved by clear and convincing evidence that he had abandoned Antaeus in the 6 months preceding the filing of the adoption petition and that therefore, his consent to the adoption would not be required.

## STANDARD OF REVIEW

[1,2] Appeals in adoption proceedings are reviewed by an appellate court for error appearing on the record. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Adoption of Micah H.*, 301 Neb. 437, 918 N.W.2d 834 (2018).

## ANALYSIS

Andrew argues the county court erred in finding he had abandoned Antaeus in the 6 months preceding the filing of the adoption petition. At the time of these proceedings, Neb. Rev. Stat. § 43-104(1) (Reissue 2016) required written consent from the biological parents prior to an adoption being decreed. However, § 43-104(2)(b) excused this requirement of a parent who abandoned the child for the 6 months

- 915 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

preceding the filing of the adoption petition. Our focus, therefore, is on whether Andrew abandoned Antaeus for the requisite time period.

[3,4] In order for a court to find that abandonment has occurred, the petitioning party bears the burden of proving by clear and convincing evidence that the parent abandoned the child. *In re Adoption of Micah H., supra.* To constitute abandonment, it must appear that there has been, by the parents, a giving up or total desertion of the minor child. *Id.* There must be shown an absolute relinquishment of the custody and control of the minor and thus the laying aside by the parents of all care for the minor. *Id.*

[5,6] Adoption statutes will be strictly construed in favor of the rights of the natural parents in controversies involving termination of the relation of the parent and child. *Id.* The various definitions of abandonment do not require an appellate court to review the statutory period in a vacuum. *Id.* One may consider the evidence of a parent's conduct, either before or after the statutory period, because this evidence is relevant to a determination of whether the purpose and intent of that parent was to abandon his or her child or children. *Id.*

[7] Andrew argues that his efforts of filing modification petitions and writing letters to the court professing his parental desire evinces his intent to parent Antaeus and negates a finding of abandonment. However, abandonment may be found where there is willful, intentional, or voluntary conduct, without just cause or excuse, that evinces a willful neglect and refusal to perform the natural and legal obligations of parental care and support. See *In re Adoption of Micah H., supra.* Evidence of a parent's conduct is relevant to a determination of whether the purpose and intent of that parent was to abandon the child. *Jeremiah J. v. Dakota D.*, 287 Neb. 617, 843 N.W.2d 820 (2014). Focusing on Andrew's conduct, not just in the 6 months preceding the filing of the adoption petition, but dating back to Antaeus' birth, we find no error in the county court's conclusion that Andrew abandoned Antaeus.

- 916 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

Andrew lived with Antaeus for approximately 6 weeks before being arrested. In the 5 years between Andrew's arrest and the abandonment hearing, Andrew has spent a total of 12 hours of supervised visitation with Antaeus. He has never contributed any sort of support toward Antaeus. While he was not ordered to pay child support, a biological father has an obligation to financially support his child. See, *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998), *overruled on other grounds, State on behalf of Miah S. v. Ian K.*, 306 Neb. 372, 945 N.W.2d 178 (2020); *Race v. Mrsny*, 155 Neb. 679, 53 N.W.2d 88 (1952). And although Andrew attempted to give some gifts to Rachel in 2018, this was a single attempt. Where there has been a protracted period of totally unjustified failure to exercise parental functions, an isolated contact or expression of interest does not necessarily negate the inference that a person no longer wishes to act in the role of parent to a child. *In re Adoption of Micah H.*, 301 Neb. 437, 918 N.W.2d 834 (2018). Even after the expiration of the protection order, which we note applied only to Rachel, Andrew never attempted to send Antaeus any items of support.

We acknowledge that Andrew filed two complaints for modification in which he sought parenting time and an order requiring child support; however, even after being awarded parenting time, he did not exercise it. And although he wrote several letters to the courts in 2019 and 2021 expressing his desire to see his son and to pay child support, he failed to take action to effectuate his words. Furthermore, the more recent letters were sent after Andrew became aware of the potential adoption.

Andrew testified that he sent letters to Rachel, although he was unable to provide copies or additional evidence providing their content. There was no evidence that Andrew ever sent letters or cards to Antaeus. While Rachel did fail to update her address with the court for a period of time, there was no evidence that Andrew attempted to send any gifts or make

- 917 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE ADOPTION OF ANTAEUS A.
Cite as 31 Neb. App. 907

contact with Antaeus during that time, but was unable to do so, or that he attempted to make any contact once her information was available.

Overall, since Antaeus' birth, including the 6 months preceding the filing of the petition for adoption, Andrew has shown an absolute relinquishment of custody, control, and care for Antaeus. He has not performed the natural and legal obligations of parental care and support. Since his arrest approximately 6 weeks after Antaeus' birth, Andrew, despite being entitled to court-ordered visitation starting in 2018, has spent 12 hours with Antaeus. He made one attempt to provide certain items for Antaeus but made no other efforts after that 2018 attempt was unsuccessful. While Andrew sent numerous letters to the court, and testified that he sent letters to Rachel, there was no testimony or evidence that he attempted to send letters, cards, or gifts to Antaeus. He has willfully neglected to perform the natural and legal obligations of parental care and support; therefore, his conduct demonstrates that he has abandoned Antaeus.

## CONCLUSION

After reviewing for error on the record, we find none. The order of the county court is affirmed.

Affirmed.